[No. 29191-0-III.    Division Three.    June 28, 2011.]

STEVENS COUNTY, *Appellant*, v. THE EASTERN WASHINGTON
GROWTH MANAGEMENT HEARINGS BOARD ET AL.,
*Respondents*.

*Peter G. Scott* (of *Gough, Shanahan, Johnson & Waterman*), for appellant.

*Robert M. McKenna, Attorney General,* and *G. Marc Worthy, Assistant,* for respondent Eastern Washington Growth Management Hearings Board.

*Paul R. Tassin,* for respondent Jeanie Wagenman.

¶1 BROWN, J. — Stevens County (County) appeals the final decision and order (FDO) and the first order of compliance (FOC) of the Eastern Washington Growth Management Hearings Board (Board) concluding the County's subdivision ordinance failed to protect critical areas as required by the Growth Management Act (GMA), chapter 36.70A RCW. The County contends (1) Jeanie Wagenman lacks standing here, (2) the Board should have deferred to County discretion, (3) the superior court improperly deferred to the Board, (4) the Board improperly considered the GMA's planning goals, (5) the Board improperly considered best available science (BAS) requirements, and (6) the County's critical areas ordinance (CAO) adequately protects critical areas. We affirm.

## FACTS

¶2 In 2007, the County enacted numerous development regulations in Resolution 2007-1, later codified as Stevens

County Code (SCC) Title 3. Jeanie Wagenman petitioned the Board to review SCC Title 3 for GMA compliance. Her petition was consolidated with others into a single case challenging SCC Title 3. In October 2008, the Board issued its FDO, in which the Board ruled SCC Title 3 complies with the GMA on every issue except one. Conclusion of law 10 states:

> Stevens County is not protecting Critical Areas as required by the GMA pursuant to RCW 36.70A.060, .172, .020(9), and .020(10) by enacting design standard development regulations, SCC 3.11 Subdivisions and SCC 3.16 Short Subdivisions which protect all of the functions and values of critical areas, and Ordinance 2007-1 is non-compliant with the GMA's requirements in regard to critical area protection as to the application of impervious surface coverage limitation and the consideration of stormwater discharges.

Hearings Board Record (HBR) at 64. The Board made the related findings:

> 9. Stevens County has previously adopted a Critical Areas Ordinance which is codified in Title 13 of the Stevens County Code.
>
> 10. There is substantial evidence in the record to support a determination that Stevens County has adopted Comprehensive Plan provisions and Development Regulations that designate and protect Critical Areas.
>
> 11. The County's adoption of [SCC] Title 3 Development Regulations, which are not the primary regulatory mechanism by which the County is protecting the functions and values of the five mandatory categories of critical areas, serves an ancillary protection purpose by further amplifying the protections of the CAO.

HBR at 62. The Board remanded chapters 3.11 and 3.16 SCC to the County for legislative action to bring those provisions into compliance with the GMA. The County adopted Ordinance No. 3-2009, which amended three provisions of SCC Title 3. Ordinance No. 3-2009 added the underlined text to SCC Title 3:

**SCC 3.11.230 Design Standards** [Subdivisions]

Any Subdivision in the Agricultural, Forest, Rural Area zones, or RC, CR, and SR overlay areas shall provide or demonstrate that the following requirements are met:

. . . .

H. When critical areas are present, ensure that lot design minimizes the effect of impervious surfaces and stormwater runoff on critical areas consistent with SCC Title 13 and SCC 3.80.

. . . .

**SCC 3.16.232 Design Standards** [Short Subdivisions]

Any Short Subdivision in the Agricultural, Forest, RA-5, AR-10, R-20 acre, and AR-10 zones, and the RC, CR, and SR overlay areas shall provide the following:

. . . .

H. When critical areas are present, ensure that lot design minimizes the effect of impervious surfaces and stormwater runoff on critical areas consistent with SCC Title 13 and SCC 3.80.

. . . .

**SCC 3.20.035 Preliminary Subdivision and Short Subdivisions**

A. The County will consider the following criteria in reviewing applications for preliminary subdivisions and short subdivisions, and may only grant preliminary approval if the applicant demonstrates that all of the criteria are met[:]

. . . .

4. Lots within the subdivision/short subdivision have been designed to minimize potential impacts to critical areas resulting from stormwater discharge and impervious surfaces. Where required, potential environmental impacts resulting from stormwater discharge and impervious surfaces have been properly mitigated pursuant to SCC Title 13 and SCC 3.80.

HBR at 79-81.

¶3 Following adoption, the Board conducted a compliance hearing. Upon reviewing the amended regulations, the

Board found they still failed to protect the functions and values of critical areas and, therefore, did not comply with the FDO, and the GMA. Specifically, the Board concluded:

> Stevens County has failed to enact legislation which complies with the Growth Management Act's requirements to protect the functions and values of critical areas as set forth in RCW 36.70A.020(10), .060(2), and .172.

HBR at 260. The Board remanded Ordinance No. 3-2009 to the County for further legislative action.

¶4 The County unsuccessfully asked the Board to reconsider, and then it petitioned the Stevens County Superior Court for review. The Board declined to participate in this judicial review, but Ms. Wagenman responded to the appeal, appearing as a respondent. The County unsuccessfully moved to dismiss Ms. Wagenman from the judicial review for lack of standing. Ultimately, the superior court affirmed the Board's actions. The County appealed.

## ANALYSIS

### A. Standing

¶5 The issue is whether Ms. Wagenman has standing to respond to Stevens County's appeal of the Board's decision. The County contends Ms. Wagenman lacks standing to participate in judicial review of the Board's decision as an aggrieved party because she does not show a reversal would result in particularized injury to her.

¶6 Standing challenges are jurisdictional and may be raised at any time. *Diehl v. W. Wash. Growth Mgmt. Hearings Bd.*, 118 Wn. App. 212, 75 P.3d 975 (2003). Our review of a growth management hearings board decision is determined by GMA standing requirements, not the Administrative Procedure Act (APA), chapter 34.05 RCW. *See Project for Informed Citizens v. Columbia County*, 92 Wn. App. 290, 296-97, 966 P.2d 338 (1998) (holding the APA's standing

scheme conflicts with the GMA's standing provisions and applying the GMA's standing requirements).

¶7 Even so, neither the GMA nor the APA denies Ms. Wagenman the opportunity to participate in judicial review of the Board's decision. The relevant provision of the GMA provides, "Any party aggrieved by a final decision of the hearings board may appeal the decision." RCW 36.70A.300(5). Ms. Wagenman has not appealed the Board's decision because she was not aggrieved by it. Similarly, the relevant provision of the APA provides, "A person has standing to obtain judicial review of agency action if that person is aggrieved or adversely affected by the agency action." RCW 34.05.530.

¶8 In sum, under the GMA, participation standing at the Board level entitles an aggrieved party standing to appeal. *Informed Citizens*, 92 Wn. App. at 296-97. Ms. Wagenman gained standing before the Board by participating in the legislative process for the challenged county code sections. Accordingly, we conclude Ms. Wagenman has standing to defend the Board's decision here.

## B. Review Process Deference

¶9 The issue is whether the Board improperly failed to defer to county discretion when applying its review standards.

¶10 "Growth management hearings boards determine compliance with the GMA and are authorized to invalidate noncomplying comprehensive plans and development regulations." *Stevens County v. Futurewise*, 146 Wn. App. 493, 508, 192 P.3d 1 (2008) (citing *Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd.*, 161 Wn.2d 415, 423, 166 P.3d 1198 (2007)). County development regulations are presumed compliant. RCW 36.70A.320(1). A growth management board should grant counties and cities broad discretion in planning for growth. RCW 36.70A.3201. That "discretion is bounded, however, by the goals and

requirements of the GMA." *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 561, 14 P.3d 133 (2000). Thus, the Board must find compliance unless it determines that the county's action is "clearly erroneous" in light of the goals and requirements of the GMA. RCW 36.70A.320(3). "An action is clearly erroneous if the Board has a firm conviction that a mistake has been committed." *Futurewise*, 146 Wn. App. at 509 (citing *Swinomish Indian Tribal Cmty.*, 161 Wn.2d at 423-24).

¶11 We review the Board's decisions under the APA. *Swinomish Indian Tribal Cmty.*, 161 Wn.2d at 424 (citing RCW 34.05.570(3)). We review the Board's legal conclusions de novo, giving substantial weight to their interpretation of the GMA. *Id.* (citing *King County*, 142 Wn.2d at 553). The Board's findings of fact are reviewed for substantial evidence. *Id.* "Substantial evidence" is " 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.' " *King County*, 142 Wn.2d at 553 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)).

¶12 The County argues judicial deference to the Board's decision, as required by the APA review standards, impermissibly conflicts with GMA legislative intent to defer to local decision making. But as the superior court noted, "It is apparent that the County has misinterpreted the different levels of review standards that apply in growth management appeals." Clerk's Papers at 314. An appellate court must "accord substantial weight to [an] agency's interpretation of the law it administers—especially when the issue falls within the agency's expertise." *In re Disciplinary Proceeding Against Brown*, 94 Wn. App. 7, 12, 972 P.2d 101 (1998). Here, the growth management hearings board is tasked with determining compliance with the GMA concerning issues its members are "qualified by experience or training in . . . land use law or land use planning." RCW 36.70A.250(1).

¶13 The Board correctly noted development regulations are presumed valid in the FDO. It noted the RCW 36.70A-.320(3) requirement that it must find compliance unless it determined clearly erroneous action. Finally, the Board recognized it acts properly if it forgoes deference to a county's action inconsistent with the requirements and goals of the GMA. *Thurston County v. Cooper Point Ass'n*, 108 Wn. App. 429, 444, 31 P.3d 28 (2001). The Board repeated this standard in its FOC.

¶14 In the discussion section of the FDO, the Board "concluded that *with limited exceptions*, the Petitioners' [sic] [including Ms. Wagenman] failed to demonstrate Stevens County's adoption of Ordinance No. 2007-01 was clearly erroneous." (Emphasis added.) "[T]he Board did find the Ordinance was non-compliant with the GMA's requirements in regard to critical area protection as to the application of impervious surface coverage limitation and the consideration of storm water discharges." HBR at 60. The Board specified "the Petitioners failed to carry their burden of proof in demonstrating Stevens County violated the GMA" in several respects; "[h]owever, . . . the Board finds and concludes the Petitioners have demonstrated Stevens County's [SCC] Title 3 Development Regulations fails to address impervious surface and stormwater discharge in regards to critical areas protection and, as such, violates RCW 36.70A.060 and .172." HBR at 60-61.

¶15 Relevant FDO findings of fact specify:

9. Stevens County has previously adopted a Critical Areas Ordinance which is codified in Title 13 of the Stevens County Code.

10. There is substantial evidence in the record to support a determination that Stevens County has adopted Comprehensive Plan provisions and Development Regulations that designate and protect Critical Areas.

11. The County's adoption of Title 3 Development Regulations, which are not the primary regulatory mechanism by which the County is protecting the functions and values of the five

mandatory categories of critical areas, serves an ancillary protection purpose by further amplifying the protections of the CAO.

12. Stevens County is not protecting critical areas as required by the GMA . . . by enacting design standard development regulations, SCC 3.11 Subdivisions and SCC 3.16 Short Subdivisions which protect all of the functions and values of critical areas.

HBR at 62. Conclusion of law 10 states:

Stevens County is not protecting Critical Areas as required by the GMA . . . by enacting design standard development regulations, SCC 3.11 Subdivisions and SCC 3.16 Short Subdivisions which protect all of the functions and values of critical areas, and Ordinance 2007-1 is non-compliant with the GMA's requirements in regard to critical area protection as to the application of impervious surface coverage limitation and the consideration of stormwater discharges.

HBR at 64. When read in its entirety, the FDO concludes the County's action was clearly erroneous based on the Board's findings that the CAO itself does not adequately address impervious surfaces or storm water runoff.

¶16 The relevant FOC findings of fact include:

18. The amendatory language does not provide specific design standards or methods of controls. No guidance is given to suggest how lot design or lot layout will reduce impacts to critical areas.

. . . .

20. The amendatory language, in regards to impervious surface, is limited to rural areas and does not address urban areas.

HBR at 259. The Board explained in conclusion of law 24, "The Petitioners have demonstrated Stevens County failed to comply with the Board's October 2008 FDO." HBR at 259.

¶17 Given this record, we cannot say the Board failed to apply the proper review standards, including deference to the County.

## C. GMA Compliance

¶18 The issue is whether the Board erred in deciding Stevens County failed to comply with GMA requirements to protect the critical area functions and values in SCC Title 3.

¶19 We review the Board's legal conclusions de novo, giving substantial weight to the Board's GMA interpretation. *Swinomish Indian Tribal Cmty.*, 161 Wn.2d at 424 (citing *King County*, 142 Wn.2d at 553). The Board's findings of fact are reviewed for substantial evidence. *Id.* "Substantial evidence" is " 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.' " *King County*, 142 Wn.2d at 553 (quoting *Callecod*, 84 Wn. App. at 673).

¶20 The party appealing a board's decision has the burden of demonstrating the invalidity of the board's actions. RCW 34.05.570(1)(a). A board's decision may be challenged on nine different bases. RCW 34.05.570(3). Here, the County seeks to invalidate the Board's FDO and FOC in three ways: (1) the Board misinterpreted and misapplied the law (RCW 34.05.570(3)(d)), (2) the Board's order is not supported by substantial evidence (RCW 34.05.570(3)(e)), and (3) the Board's order is arbitrary and capricious (RCW 34.05.570(3)(i)). The GMA requires local governments to designate and protect critical areas. RCW 36.70A.060(2), .170. Local governments are directed to include BAS in developing policies to designate and protect critical areas. RCW 36.70A.172(1).

¶21 First, the County contends the Board misinterpreted and misapplied the law because the specific GMA code sections the Board cited do not apply. In referencing the GMA's requirement to protect critical areas, the Board referenced RCW 36.70A.020(10), .060(2), and .172. HBR at 62, 64, 262. Citing *Quadrant Corp. v. Central Puget Sound Growth Management Hearings Board*, 154 Wn.2d 224, 245-47, 110 P.3d 1132 (2005), the County argues RCW

36.70A.020(10) is merely a planning goal without substantive requirements. *Quadrant* reversed the superior court, holding the GMA goals do not themselves impose substantive requirements. *Id.* However, in *Quadrant*, the superior court had solely ruled King County's code violated the GMA goals. *Id.* The *Quadrant* court specifically distinguished its holding from the holding in *King County*:

> In *King County*, this court considered both the goals and the requirements of the GMA in determining whether allowing active recreation on designated agricultural lands violated the GMA. However, *King County* did not rely on the applicable goal in isolation nor did it hold the goals to independently create substantive requirements. Rather this court construed the GMA's relevant agricultural provisions there as a whole as a means of discerning legislative intent.

*Id.* at 246 (citation omitted). Our case is like *King County* and not like *Quadrant* because here the Board declared the County's code noncompliant based on the critical areas provisions as a whole, not solely on RCW 36.70A.020(10). Thus, the Board's reference to RCW 36.70A.020(10) was not a legal misinterpretation or misapplication.

¶22 Second, the County contends RCW 36.70A.172 is inapplicable because the Board found the GMA did not require the use of BAS when drafting subdivision codes. The Board explained, "[U]nless a jurisdiction is relying solely on an outside regulation to protect a critical area, only CAOs are required to be based on BAS." HBR at 254-55. The Board's references to RCW 36.70A.172 highlight the GMA's critical areas protection requirement provisions as a whole. We do not construe the references to mean the County failed to comply with RCW 36.70A.172 BAS requirements. Therefore, the Board did not misinterpret or misapply the law.

¶23 Third, the County contends that the Board's ruling of code noncompliance with RCW 36.70A.060(2) misinter-

prets and misapplies the law, is not supported by substantial evidence, and is arbitrary and capricious. RCW 36.70A.060(2) partly provides, "Each county and city shall adopt development regulations that protect critical areas." The County has a CAO in SCC Title 13. The Board's final decision and order included the following unchallenged finding:

> 10. There is substantial evidence in the record to support a determination that Stevens County has adopted Comprehensive Plan provisions and Development Regulations that designate and protect Critical Areas.

HBR at 62. Based on this finding, the County argues the Board found it complied with RCW 36.70A.060(2) by adopting the CAO. The County reasons since its CAO satisfies RCW 36.70A.060(2), the Board misinterpreted the law because its subdivision code does not need further amplification.

¶24 However, the Board explained in the original order:

> The Board does not discount the County's use of a CAO to protect critical areas from adverse impacts . . . . However, . . . RCW 36.70A.060(2) requires the adoption of DRs [development regulations] that protect designated critical areas and the Board does not see a CAO as the *only* regulation which serves to protect critical areas.

> With the exception of provisions relating to the expansion of non-conforming uses, the CAO does not address impervious surfaces, nor, with the exception of noting one of the beneficial functions of wetlands in storm water control, does the CAO address storm water run-off itself. Therefore, these aspects of environmental protection are left to other DRs.

HBR at 49-50 (footnotes omitted). And, the Board found:

> 11. The County's adoption of [SCC] Title 3 Development Regulations, which are not the primary regulatory mechanism by which the County is protecting functions and values of the five mandatory categories of critical areas, serves an ancillary protection purpose by further amplifying the protections of the CAO.

HBR at 62. The Board did not interpret RCW 36.70A.060(2) to require solely a CAO. Development regulations, by definition, include critical areas ordinances and subdivision ordinances. RCW 36.70A.030(7). Therefore, SCC Title 3 was required to comply with RCW 36.70A.060(2).

¶25 Given this setting, we find no material inconsistency with the Board's approach recognizing the County's adoption of development regulations designating and protecting critical areas and its determination that overall SCC Title 3 did not match up with GMA requirements. The County's arbitrary and capricious arguments thus fail as well.

¶26 Moreover, the record shows substantial evidence that the subdivision code fails to protect critical areas. The Board found the SCC Title 3 amendments insufficient to satisfy RCW 36.70A.060(2) for three reasons: (1) minimizing impacts does not protect further degradation as required by the GMA; (2) the amendments do not apply countywide as directed by the FDO; and (3) they provide no standards or guidance for local decision makers. The words "minimize the effects" do not mean the same thing as "protect." Chapters 3.11 and 3.16 SCC do not address impervious surface coverage in multiple important contexts, addressing impervious surfaces solely in certain subsets of the urban residential and rural agriculture areas. The amendments do not apply countywide and do not mention methods for addressing storm water or impervious surface coverage.

¶27 Given all, we conclude the Board did not err in determining overall that SCC Title 3 fails to protect critical areas.

## D. In-Kind Tax

¶28 The issue is whether the Board erred by imposing an unlawful in-kind tax under RCW 82.02.020 in suggesting the County put fixed percentage-based limits on impervious surfaces.

¶29 RCW 82.02.020 directs that generally, "no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the . . . subdivision . . . of land." A "tax, fee, or charge" may be in-kind as well as in dollars. *Citizens' Alliance for Prop. Rights v. Sims*, 145 Wn. App. 649, 662, 187 P.3d 786 (2008) (citing *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 758, 49 P.3d 867 (2002)), *review denied*, 165 Wn.2d 1030 (2009).

¶30 RCW 82.02.020 applies to development conditions adopted pursuant to the GMA. *Id.* at 663. It does not, however, preclude "dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply." RCW 82.02.020. In other words, it requires " 'that development conditions must be tied to a specific, identified impact of a development on a community.' " *Citizens' Alliance*, 145 Wn. App. at 665 (quoting *Isla Verde*, 146 Wn.2d at 761).

¶31 In *Citizens' Alliance*, the King County ordinance at issue limited the amount of space to be cleared on each lot according to the size of the lot. *Id.* at 654. The amount of land to be reserved had no relation to the impacts of the proposed development. *Id.* at 668. For that reason, the ordinance constituted an unlawful in-kind tax. *Id.* at 672.

¶32 In contrast, in *Trimen Development Co. v. King County*, 124 Wn.2d 261, 275, 877 P.2d 187 (1994), a King County ordinance requiring dedication of open recreational space, or payment of a fee in lieu thereof, for final approval of proposed subdivisions was lawful under RCW 82.02.020 because it determined the amount of land to be dedicated (or fee) based on King County's comprehensive assessment of its park needs and on its annual growth report.

¶33 Here, the Board did not actually dictate any specific regulatory scheme to the County, but it suggested that

"[r]elying on scientific documentation which delineates impacts based on percentage of coverage[,] . . . setting a maximum permissible coverage limitation was an easily accomplished task." HBR at 254. In footnote 77 of HBR 254, the Board explained, "In the Board's experience, many jurisdictions establish maximum coverage. Most jurisdictions utilize total percentage of the parcel when establishing the maximum but some vary coverage based on land use (residential [v]ersus industrial), topographical, or environmental features." The Board specifically left the responsibility of creating impervious surface restrictions to the County, and its suggestion implied that those restrictions should be based on impacts. The Board clarified in conclusion of law 22, "Washington State Law does not preclude the establishment of a fixed percentage-based restriction so long as that restriction is related to the impacts of the proposed development." HBR at 259.

¶34 Considering all, we conclude the Board did not impose a tax by suggesting the County use fixed percentage-based limits on impervious surface coverage.

¶35 Affirmed.

KORSMO, A.C.J., and SIDDOWAY, J., concur.