

APR -9 2013

COURT OF APPEALS
DIVISION III
STATE OF WASHINGTON

# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | |
|---|---|
| Manna Funding, LLC a Washington Limited Liability Company, Wild Horse Ranch, LLC, a Washington Limited Liability Company, Peregrine Skies, LLC, a Washington Limited Liability Company, Premier Property and Development Group, LLC, a Washington Limited Liability Company, Wild Rivers Crossing, LLC, a Washington Limited Liability Company,<br><br>            Appellants,<br><br>    v.<br><br>Kittitas County, a Washington municipal corporation,<br><br>            Respondent. | No. 30539-2-III<br><br><br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND AMENDING OPINION |

The court has considered appellants' motion for reconsideration and is of the opinion the motion should be denied. Therefore,

IT IS ORDERED the motion for reconsideration of this court's decision of February 28, 2013, is denied.

IT IS FURTHER ORDERED that the opinion shall be amended as follows:

Footnote 8 at the end of the second full paragraph on page 21 shall be deleted.

The second sentence in the second full paragraph on page 21 that begins "Manna's failure" shall be amended to delete the words "invidious and."

DATED: April 9, 2013

PANEL:     Judges Kulik, Korsmo, Siddoway

FOR THE COURT:

KEVIN M. KORSMO
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| Manna Funding, LLC a Washington Limited Liability Company, Wild Horse Ranch, LLC, a Washington Limited Liability Company, Peregrine Skies, LLC, a Washington Limited Liability Company, Premier Property and Development Group, LLC, a Washington Limited Liability Company, Wild Rivers Crossing, LLC, a Washington Limited Liability Company, | ) ) ) ) ) ) ) ) ) ) | No. 30539-2-III |
| Appellants, | ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| Kittitas County, a Washington municipal corporation, | ) ) ) | |
| Respondent. | ) | |

KULIK, J. — The Kittitas County Board of County Commissioners (Board) twice

denied an application by Manna Funding, LLC[1] for site-specific rezoning of its rural

---

[1] There are five appellants with equal interests in the subject property: Manna Funding, LLC; Wild Horse Ranch, LLC; Peregrine Skies, LLC; Premier Property and Development Group, LLC; and Wild Rivers Crossing, LLC. All are collectively referred to by the parties as Manna.

acreage near Roslyn. Manna sought relief under the Land Use Petition Act (LUPA), chapter 36.70C RCW, and the superior court ordered Kittitas County (the County) to grant the rezone. Manna additionally sued the County for a claimed violation of RCW 64.40.020 and 42 U.S.C. § 1983, and for tortious interference with a business expectancy/tortious delay. The court dismissed Manna's lawsuit on summary judgment and awarded the County attorney fees. Manna appeals.

We affirm the summary judgment order based upon our conclusions that (1) Manna's application for rezoning was not an "application for a permit" for purposes of a cause of action under RCW 64.40.020; (2) Manna had no federally protected property interest in its application for rezoning for purposes of a claim under 42 U.S.C. § 1983; and (3) Manna produced no evidence of a contractual relationship or business expectancy necessary to sustain its claims for tortious interference with a business expectancy or tortious delay. We vacate the attorney fee award, however, and remand to the superior court with instructions to award the County its attorney fees attributable solely to the RCW 64.40.020 claim.

## FACTS

In October 2006, Manna submitted to Kittitas County its application for a site-specific rezone from "Forest and Range 20" (FR-20) to "Rural 3" (R-3) of its 100.31

2

acres of land lying north of the City of Roslyn and east of State Route 903. The land had been zoned FR-20 in 1992. The requested rezone would allow a reduction in lot sizes from 20 acres to 3 acres per residential unit. Manna made clear in its application that it was currently seeking only a zoning reclassification, that no specific development activities were currently proposed, and that any future development would comply with the County's development regulations existing at the time of the application. A State Environmental Policy Act (SEPA), chapter 43.21C RCW, mitigated determination of nonsignificance was issued by County staff in December 2006.

After open record proceedings that included public testimony for and against Manna's proposal, the County's Planning Commission adopted findings of fact and a recommendation that the Board deny the rezone. The Board did so by Resolution 2007-53 that was entered on May 15, 2007. The Board found that Manna failed to prove the rezone would contribute to the health, safety, and welfare of the surrounding zone, but did not elaborate on that finding. The Board also determined that Manna's proposal failed to

No. 30539-2-III
*Manna Funding v. Kittitas County*

meet several necessary criteria for a rezone under Kittitas County Code (KCC)

17.98.020(7).[2] The Board's findings reflected concerns that questionable property access

and steep slope hindering fire safety impacted the public health, safety, and welfare; that

the rezone would not have merit or value for the County or sub-area; that the steep slope

made the property unsuitable for reasonable development in general conformance with R-

3 zoning standards; and, that the proposed rezone would be materially detrimental to the

nearby urban forest zone and possibly to the historic city of Roslyn. The Board gave no

other supporting details or reasons for its findings.

---

[2] The criteria in KCC 17.98.020(7) are:
   a. The proposed amendment is compatible with the comprehensive plan.
   b. The proposed amendment bears a substantial relation to the public health, safety or welfare.
   c. The proposed amendment has merit and value for Kittitas County or a sub-area of the county.
   d. The proposed amendment is appropriate because of changed circumstances or because of a need for additional property in the proposed zone or because the proposed zone is appropriate for reasonable development of the subject property.
   e. The subject property is suitable for development in general conformance with zoning standards for the proposed zone.
   f. The proposed amendment will not be materially detrimental to the use of properties in the immediate vicinity of the subject property.
   g. The proposed changes in use of the subject property shall not adversely impact irrigation water deliveries to other properties.
   h. The proposed amendment is in full compliance with chapter 17.13 KCC, Transfer of Development Rights.
Subsection h was added by Ordinance 2010-006 in 2010 and is not applicable in this case.

4

On June 5, 2007, Manna filed a LUPA petition requesting the superior court to overturn Resolution 2007-53. The petition also incorporated a complaint for damages under RCW 64.40.020 and 42 U.S.C. § 1983. After determining that the Board failed to adequately review the record and make meaningful findings of fact from which its conclusions could be drawn, the superior court reversed the Board's decision, vacated Resolution 2007-53, and remanded the matter for new hearings before the Planning Commission and Board. The court specifically instructed the Board to conduct on-the-record discussions to illuminate its decision-making, and to make detailed findings of fact to support its conclusions. The court elaborated:

> Any finding of fact and conclusion of law set forth in the resolution should reflect just what the Board has reviewed in determining its findings. Moreover, the findings should be based upon the evidence presented, not on conclusions that the applicant did not meet rezone criteria. For instance, if the Board were to make an ultimate finding that access was questionable, it should make particular findings based upon the record to demonstrate why the access was questionable. . . . Similarly, making a bald finding that the petitioners did not meet their burden of proof to demonstrate the rezone positively affected the health, safety, morals and general welfare of the county, without making findings of fact as to why the Board **concludes** it did not meet the burden does not help the court in its judicial review of the proceedings.

Clerk's Papers (CP) at 534 n.18.

After a new public hearing and findings by the Planning Commission, the Board entered Resolution 2008-104 on June 17, 2008, again denying Manna's application. The

5

Board found Manna failed to show that the proposed R-3 zoning would contribute to the health, safety, and welfare of the surrounding zone. The Board further found with respect to the KCC rezone criteria that (1) Manna's proposed amendment "would not change access to the property" and therefore bears no relation to the health, safety, and welfare, (2) Manna failed to prove the rezone had merit and value for Kittitas County or a sub-area of the County, (3) "there is no warranted change in circumstances . . . [and] further . . . the analysis in the record is not sufficient to determine there is a need for additional property in the proposed zone," and (4) "information in the record regarding the commercial forest zone to the north and the Urban Forest Zone to the south would make a Rural-3 zone detrimental to the existing zones." CP at 790.

On July 8, 2008, Manna filed a second LUPA petition, seeking to overturn Resolution 2008-104. The petition likewise included a complaint for damages under RCW 64.40.020 and 42 U.S.C. § 1983. In a memorandum decision issued on February 5, 2009, the court observed that the Board failed to heed its instructions to include detailed findings to explain the reasons for its decision, and that its findings were again too conclusory for review. The court ruled that substantial evidence conclusively established Manna had met its burden on all of the KCC rezoning criteria, and that the R-3 zone comports with the comprehensive plan and implements its goals and policies relating to

rural lands. Consequently, the rezone bears a substantial relationship to the public welfare.[3] The court thus reversed the Board's decision, vacated Resolution 2008-104, and remanded the matter to the Board with instructions to approve Manna's requested rezone.[4] The County did not appeal. On February 18, 2009, the Board entered an ordinance approving Manna's requested R-3 zone change.

Manna subsequently filed an amended complaint on August 11, 2011, adding claims for tortious interference with a business expectancy and tortious delay. Manna filed a motion for partial summary judgment as to RCW 64.40.020 liability of the County for claimed arbitrary and unlawful delay by the Board, while reserving damages issues for discovery and a trial. The County filed a cross motion for summary judgment to dismiss Manna's entire lawsuit on grounds of absence of standing, limitations, ripeness, and

---

[3] The court cited to *Henderson v. Kittitas County*, 124 Wn. App. 747, 100 P.3d 842 (2004) (rezone that furthers the goals of the county's comprehensive plan bears a substantial relationship to the public health, safety, morals, or general welfare).

[4] While not expressed in its written findings, the Board's limited discussions on the record revealed continued concern about access to the property due to steepness/safety issues, and perceived lack of merit or value to the County because Manna had no project pending and it was only speculative whether the assessed value of the property may increase. The court rejected these considerations in its memorandum decision. The court ruled there was no basis for a finding of no relationship to the health, safety, and welfare of the County because road access/engineering issues are not proper considerations for zoning approval, but pertain only to specific development/permitting requirements. The court also found Manna provided evidence that the rezone would eventually add to the County's tax base, thus demonstrating merit and value for the County.

failure to satisfy the elements of its various claims. The court denied Manna's motion

and granted the County's motion. The court awarded the County $21,496.50 in attorney

fees as prevailing party under RCW 64.40.020. Manna appeals.

ANALYSIS

This court reviews an order of summary judgment de novo. *Hisle v. Todd Pac.*

*Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is

appropriate when there is "no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is of such

a nature that it affects the outcome of the litigation." *Ruff v. County of King*, 125 Wn.2d

697, 703, 887 P.2d 886 (1995). We consider the facts and inferences from the facts in the

light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291,

300, 45 P.3d 1068 (2002).

A defendant moving for summary judgment may meet the initial burden by

pointing out the absence of evidence to support the nonmoving party's case. *Young v.*

*Key Pharms., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "If the moving

party is a defendant and meets the initial showing, then the inquiry shifts to the party with

the burden of proof at trial, the plaintiff." *Id.* at 225 (footnote omitted). The facts set

forth must be specific, detailed, and not speculative or conclusory. *Sanders v. Woods*,

121 Wn. App. 593, 600, 89 P.3d 312 (2004). If, at this point, the plaintiff "'fails to make

a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial', then the trial court should

grant the motion." *Young*, 112 Wn.2d at 225 (quoting *Celotex*, 477 U.S. at 322).

*Damages Claim under RCW 64.40.020*. The issue is whether a site-specific rezone

application is an "application for a permit" for purposes of a cause of action under chapter

64.40 RCW.

RCW 64.40.020(1) provides in pertinent part:

> Owners of a property interest who have filed an *application for a permit*
> have an action for damages to obtain relief from *acts of an agency* which
> are arbitrary, capricious, unlawful, or exceed lawful authority.

(Emphasis added.)

The definitions section in RCW 64.40.010 includes the following:

> (2) "Permit" means any governmental approval required by law
> before an owner of a property interest may improve, sell, transfer, or
> otherwise put real property to use.
> . . . .
> (5) "Regulation" means any ordinance, resolution, or other rule or
> regulation adopted pursuant to the authority provided by state law, which
> imposes or alters restrictions, limitations, or conditions on the use of real
> property.
> (6) "Act" means a final decision by an agency which places
> requirements, limitations, or conditions upon the use of real property in

excess of those allowed by applicable regulations in effect on the date an application for a permit is filed.

Manna broadly contends that Resolutions 2007-53 and 2008-104 were "acts" on an "application for a permit" for purposes of RCW 64.40.020(1) because they were final decisions by the County that placed limitations upon the use of Manna's real property. Manna then argues that a site-specific rezone application plainly falls within the definition of "permit" because it is a "governmental approval required by law" before an owner of a property interest may "put real property to use." Manna reasons that a site-specific rezone application involves quasi-judicial decisionmaking, thus subjecting an agency to liability under RCW 64.40.020. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 103-05, 111, 829 P.2d 746 (1992). This is in contrast to area-wide rezones, which are legislative in nature and subject to a different review procedure under the Growth Management Act, chapter 36.70A RCW. *Woods v. Kittitas County*, 162 Wn.2d 597, 608, 174 P.3d 25 (2007). The definition of "project permit" under LUPA[5] is

---

[5] RCW 36.70C.020(2) provides in pertinent part:
"Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
    (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but . . . excluding applications for legislative approvals such as area-wide rezones and annexations.

10

virtually identical to the definition of "permit" under RCW 64.40.010(2), as shown by case law establishing that a site-specific rezone is a "project permit application" subject to LUPA review. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 181 n.2, 4 P.3d 123 (2000); *Woods*, 162 Wn.2d at 608. Manna thus reasons that to hold that a site-specific rezone meets the definition of "permit" under LUPA but not the virtually identical definition in RCW 64.40.010(2) would defy plain meaning. And consistent with this reasoning, the term "permit" for purposes of a cause of action under RCW 64.40.020 is not strictly limited to building permits, grading permits and the like, but pertains to a broad range of approval and decisions affecting use of property—including rezone decisions.

The County contends that RCW 64.40.020(1), by its clear terms, allows recovery of damages only to a property owner who has applied for a permit to develop the property. Since Manna's application was strictly for a rezone, it lacks standing to bring a claim under RCW 64.40.020(1). *Westway Constr., Inc. v. Benton County*, 136 Wn. App. 859, 866, 151 P.3d 1005 (2006).

No Washington case is cited or found that addresses whether a site-specific rezone application is an "application for a permit" under RCW 64.40.020(1). Statutory interpretation is a question of law reviewed de novo. *W. Telepage, Inc. v. City of Tacoma*

11

No. 30539-2-III
*Manna Funding v. Kittitas County*

*Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Courts apply general principles of statutory construction in determining the meaning of statutory language. If the language of a statute is plain and unambiguous, we derive its meaning from the language of the statute itself. *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998). Statutes are interpreted so that all language is given effect and no portion is rendered meaningless or superfluous. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). A court "should interpret the meaning of terms in the context of the statute as a whole and consistently with the intent of the legislature." *One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc.*, 148 Wn.2d 319, 330, 61 P.3d 1094 (2002). If the language is susceptible to more than one reasonable interpretation, an ambiguity exists and courts attempt to give effect to the intent and purpose of the legislature. *Harmon*, 134 Wn.2d at 530. If the intent of a statute is not clear, the court may resort to statutory construction, including a consideration of legislative history. *Cherry v. Mun. of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991); *Harmon*, 134 Wn.2d at 530 (to discern legislature's intent, a court may look to any legislative history materials that are probative of that intent); *Lutheran Day Care*, 119 Wn.2d at 104-05 (same).

RCW 64.40.020(1) is clear that only an owner with an interest in the property who

12

has filed an "application for a permit" may sue for damages under the statute. *Westway Constr.*, 136 Wn. App. at 866 (plaintiff lacked standing under RCW 64.40.020 because contractor who applied for permit had no property interest and person with property interest did not apply for permit). "Standing challenges are jurisdictional and may be raised at any time." *Stevens County v. E. Wash. Growth Mgmt. Hearings Bd.*, 163 Wn. App. 680, 686, 262 P.3d 507 (2011), *review denied*, 173 Wn.2d 1019 (2012). While Manna does have the standing of an interested property owner under RCW 64.40.020(1), the dispositive question is whether it also has the permit applicant status necessary to sue under the statute.

RCW 64.40.020(1) is also clear that a "permit" applicant's cause of action for damages is "to obtain relief from *acts* of an agency." (Emphasis added.) A county is an agency for purposes of the statute. RCW 64.40.010(1); *Lutheran Day Care*, 119 Wn.2d at 101. Under RCW 64.40.010(6), an "act" is defined as that which places "requirements, limitations, or conditions upon the use of real property *in excess of those allowed by applicable regulations in effect on the date an application for a permit is filed.*" (Emphasis added.) Manna does not address the above-italicized language. The legislative history, however, sheds light on this already-clear language as pertains to the particular question whether a rezone application is "an application for a permit" for

13

purposes of RCW 64.40.020(1).

Chapter 64.40 RCW was passed by the legislature in 1982. LAWS OF 1982, ch. 232. The bill originated as H.B. 1006 and became Substitute H.B. 1006. Viewing legislative history, the bill file includes a document entitled "Bill Analysis" for the House Committee on Local Government. The document explains the bill's intended scope:

> Acts of a public entity which are subject to a lawsuit under the bill include <u>requirements or conditions</u> placed upon land that are <u>in excess</u> of the <u>zoning</u> and other restrictions upon the use of the land <u>in effect at the time an application for a "permit["] is made</u>. A "permit" is defined as governmental approval required by law before a property owner may improve, sell or otherwise use property.

HOUSE COMM. ON LOCAL GOVERNMENT, H.B. ANALYSIS on H.B. 1006, at 2, 47th Leg., Reg. Sess. (Wash. Jan. 25, 1982) (on file with Wash. State Archives); *see also* HOUSE COMM. ON LOCAL GOVERNMENT, SUMMARY on H.B. 1006 ("Act" is defined as when public entity imposes conditions or limitations which are more stringent than those contained in adopted regulations) (on file with Wash. State Archives); SENATE COMM. ON JUDICIARY, SYNOPSIS on Substitute H.B. 1006, at 1 (Wash. Feb. 23, 1982) (on file with Wash. State Archives).[6]

---

[6] The Senate Journal contains another pertinent point of inquiry about the bill's intent. Senator Metcalf queried: "'Senator Hemstad, this does, then, make it substantially easier to develop property? This is a development bill, this is a real estate development bill or is it, make it more difficult or more easy to develop property?'" 1 SENATE

More pointedly, the House Committee file and Senate Committee file also each

include a "Discussion of Issues" document that contains the following question and

answer:

> 3.  Will HB 1006 create a cause of action if an application for a zone
>     change is denied?
>     [Answer] No. HB 1006 does not apply to zone changes. It only creates a cause of
>     action when the allowable use under applicable regulations is denied or restricted
>     without just cause.

Discussion of Issues, H.B. 1006, 47th Leg., Reg. Sess., at 1 (Wash. 1982) (on file with

Wash. State Archives).

In addition, a bill summary from the Washington Association of Realtors

contained in the Senate Committee file sheds further light on the object of legislative

remedy—government attempts to "*downzone*" property following receipt of permit

applications. The Realtors summary explains that a typical example of the problem was a

developer who filed a legal action claiming an arbitrary and capricious decision by the

county for approving his plat, but with one-third less lots than allowed by zoning. Two

years later, the court overturned the lower density so the plat was finally approved as

---

JOURNAL, 47th Leg., Reg. Sess., at 1449 (Wash. 1982). Senator Hemstad responded:
"'What it is doing is providing to a party with a grievance for arbitrary, capricious, or
unlawful conduct by local officials in failure on a timely basis to authorize the
development of the property to recover damages for that period of time in which the
property was improperly withheld from development.'" *Id.*

originally requested with full density, but current law (pre-chapter 64.40 RCW) did not give the property owner any damages relief. Wash. Ass'n of Realtors, *No. 1 Priority for 1982*, Substitute H.B. 1006, Section 8 (Wash. Feb. 12, 1982) (located in Senate Committee on Judiciary file on H.B. 1006) (on file with Wash. State Archives).

Manna's situation is just the opposite because its application was to *upzone* its property from FR-20 to R-3. The County did not impose restrictions of less than one residence for every 20 acres when it denied Manna's requested R-3 rezone. This helps further illustrate why the County's resolutions denying the rezone were not "acts" as defined in RCW 64.40.010(6) because its challenged decisions did not place any new requirements, limitations, or conditions upon the use of real property in excess of those allowed Manna under then-current FR-20 zoning. Critically, Manna's application was strictly for a rezone only and not for any type of development permit.

We conclude that when the plain language of the statute pertaining to "acts" of an agency for which an "applicant" may sue is viewed in light of the legislative history, an application, such as Manna's, that *solely requests the rezoning of property* is not an "application for a permit" under RCW 64.40.020(1). *See Westmark Dev. Corp. v. City of Burien*, 140 Wn. App. 540, 548, 166 P.3d 813 (2007) (purpose of chapter 64.40 RCW is to "'provide a swift remedy for property damage caused by governmental agency

16

action'") (quoting *Wilson v. City of Seattle,* 122 Wn.2d 814, 825, 863 P.2d 1336 (1993)).

While Manna correctly argues that a court determining legislative intent may also look to other statutes dealing with the same subject matter, *see e.g., Harmon,* 134 Wn.2d at 530, such inquiry is not relevant here. Manna's analogy to RCW 36.70C.020(2)(a) and case authority from *Wenatchee Sportsmen* and *Woods* that a site-specific rezone is a "project permit application" under LUPA is not controlling. Those cases did not involve a claim under RCW 64.40.020. And Manna was able to receive its available remedy under LUPA when the court ordered the County to approve the rezone and the County did so by ordinance. *See* RCW 36.70C.030(1)(c) (distinguishing land use petition from trial on claims for monetary damages and compensation).

We affirm the trial court's summary judgment dismissal of Manna's RCW 64.40.020 claim on the sole basis that Manna did not file an "application for a permit" giving rise to a cause of action for any "act" of the County under the statute. *See Young,* 112 Wn.2d at 225 (failure of proof on an essential element renders immaterial all other facts as to claim) (quoting *Celotex,* 477 U.S. at 322-23); *Boyce v. West,* 71 Wn. App. 657, 665, 862 P.2d 592 (1993) (same). Whether Manna's suit was barred for failure

17

to exhaust administrative remedies under RCW 64.40.030 is irrelevant in this situation.[7]

*42 U.S.C. § 1983 Due Process Claim.* 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To establish a prima facie due process violation under § 1983, the plaintiff must show that the defendant deprived the plaintiff of a constitutionally protected property right. *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 962, 954 P.2d 250 (1998); *Robinson v. City of Seattle*, 119 Wn.2d 34, 58, 830 P.2d 318 (1992); *see Nieshe v. Concrete Sch. Dist.*, 129 Wn. App. 632, 641-42, 127 P.3d 713 (2005) (fact that decision-making entity may have deviated from its procedures, or acted arbitrarily, is not a prima facie deprivation of constitutional due process) (citing *Williams v. City of Seattle*, 607 F. Supp. 714, 718–19 (W.D. Wash. 1985)). "Property interests are not created by the

---

[7] We also do not decide whether the Board acted arbitrarily, capriciously, or unlawfully in its denials of Manna's rezone application. We note with respect to damages that Manna presented no evidence of compensable damages under RCW 64.40.010(4) in response to *the County's* motion for summary judgment so as to meet its summary judgment burden of prima facie establishing each element of RCW 64.40.020.

constitution but are reasonable expectations of entitlement derived from independent sources such as state law." *Mission Springs*, 134 Wn.2d at 962 n.15 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). "'A protected property interest exists if there is a "legitimate claim of entitlement" to a specific benefit.'" *Nieshe*, 129 Wn. App. at 641-42 (quoting *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)).

Consistent with these principles, the law is well settled that a landowner has a vested right to develop land under the zoning ordinances in effect at the time the permit application is submitted. *See Weyerhaeuser v. Pierce County*, 95 Wn. App. 883, 890, 976 P.2d 1279 (1999); *Hale v. Island County*, 88 Wn. App. 764, 771, 946 P.2d 1192 (1997). This is well illustrated, for example, in *Mission Springs*, 134 Wn.2d at 962 (developer who met ordinance requirements had constitutionally cognizable right to grading permit), and *Cox v. City of Lynnwood*, 72 Wn. App. 1, 863 P.2d 578 (1993) (applicant meeting code requirements for boundary line adjustment entitled to § 1983 damages for city's arbitrary and capricious denial). *Cf. Kelly v. Chelan County*, 157 Wn. App. 417, 427-28, 237 P.3d 346 (2010) (development rights to project did not vest under the regulations in effect at time of application for conditional use permit).

Manna contends that its interest in obtaining a valid and lawful decision on its rezone application is a protected "property interest" under 42 U.S.C. § 1983. Manna again theorizes that because a site-specific rezone is a land use decision (project permit application under LUPA), it would also defy logic to not provide rezone applicants the same substantive due process protections of § 1983 that *Lutheran Day Care,* 119 Wn.2d at 125, confirms are afforded other applicants for conditional use permits and building permits. We reject Manna's arguments.

The dispositive principle, as urged by the County, is that "vested rights generally do not apply to rezoning applications because at that point no decision has been rendered." *Hale,* 88 Wn. App. at 771 (citing *Teed v. King County,* 36 Wn. App. 635, 644, 677 P.2d 179 (1984); 6 WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 97.8(2)(g) at 97-46 (3d ed. 1996)); *see also Braun v. Ann Arbor Charter Township,* 519 F.3d 564, 573-74 (6th Cir. 2008) (plaintiff landowners had no constitutionally protected property interest in application for future rezoned use of farm property for a trailer park); *Camastro v. City of Wheeling,* 49 F. Supp. 2d 500, 505-06 (N.D. W.Va. 1998) (plaintiff had no protected property interest for 42 U.S.C. § 1983 due process purposes in obtaining zoning variance for car wash building).

We conclude that Manna had no vested/constitutionally protected property right pertinent to R-3 zoning prior to the superior court's February 5, 2009 order directing the County to grant its application. Until that time, its constitutionally protected property interest was under existing FR-20 zoning for which no violation is claimed and nothing was lost. Manna cites no authority that there is a federally protected property interest under § 1983 in obtaining a decision on a mere application to rezone ("upzone") property. Moreover, the County promptly issued the rezone ordinance within two weeks of the trial court's order.

Accordingly, we uphold the trial court's summary judgment dismissal of Manna's § 1983 claim on the basis there is no evidence that the County deprived Manna of a federally protected property right. Manna's failure of proof on this essential element renders immaterial the facts relating to ripeness issues and to Manna's claim that the Board denied it substantive due process by acting in arbitrary or invidious and irrational fashion in passing on its rezone application. *Young*, 112 Wn.2d at 225; *Boyce*, 71 Wn. App. at 665.[8]

---

[8] In any event, we have carefully reviewed the record of the proceedings before the Planning Commission and Board. As a matter of law, we find no conduct approaching the animus necessary to sustain a § 1983 action. *See Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 23, 829 P.2d 765 (1992) (applying "invidious or irrational" standard to land use decisions in Washington); *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47, 118 S.

*Tortious Interference with Business Expectancy/Delay.* A claim for tortious

interference with a business expectancy requires five elements: (1) the existence of a

valid contractual relationship or business expectancy, (2) that defendants had knowledge

of that relationship, (3) an intentional interference inducing or causing a breach or

termination of the relationship or expectancy, (4) that defendants interfered for an

improper purpose or used improper means, and (5) resultant damage. *Leingang v. Pierce*

*County Med. Bur., Inc.,* 131 Wn.2d 133, 157, 930 P.2d 288 (1997). Arbitrary delay is one

improper means of interfering with a business expectancy. *Pleas v. City of Seattle,* 112

Wn.2d 794, 805, 774 P.2d 1158 (1989); *Westmark Dev. Corp.,* 140 Wn. App. at 560.

Citing to *Westmark,* Manna applies these five elements to both its tortious interference

and tortious delay claims. Br. of Appellant at 46.

A valid "business expectancy" includes any prospective contractual or business

relationship that would be of pecuniary value. *Newton Ins. Agency & Brokerage, Inc. v.*

*Caledonian Ins. Group, Inc.,* 114 Wn. App. 151, 158, 52 P.3d 30 (2002) (citing

---

Ct. 1708, 140 L. Ed. 2d 1043 (1998) (applying "shocks the conscience" standard to
§ 1983 cases not involving claimed denial of a fundamental right); *Shanks v. Dressel,* 540
F.3d 1082, 1088-89 (9th Cir. 2008) (same); *see also Mongeau v. City of Marlborough,*
492 F.3d 14, 17-18 (1st Cir. 2007); *Eichenlaub v. Township of Indiana,* 385 F.3d 274,
285-86 (3rd Cir. 2004); *United Artists Theatre Circuit, Inc. v. Township of Warrington,*
316 F.3d 392, 399, 402 (3rd Cir. 2003); *Licari v. Ferruzzi,* 22 F.3d 344, 347 (1st Cir.
1994).

RESTATEMENT (SECOND) OF TORTS § 766B, cmt. c (1979)). "All that is needed is a relationship between parties contemplating a contract, with at least a reasonable expectation of fruition. And this relationship must be known, or reasonably apparent, to the interferor." *Scymanski v. Dufault*, 80 Wn.2d 77, 84-85, 491 P.2d 1050 (1971).

Manna contends that summary judgment dismissal was improper because it established a prima facie case on all five elements: (1) the business expectancy was the rezone approval once Manna met all of the KCC 17.98.020(7) criteria; (2) Kittitas County had full knowledge of the relationship with Manna through its rezone application and first LUPA petition; (3) if not after Resolution 2007-53, then certainly after Resolution 2008-104, the County had intentionally interfered with Manna's expectation of a lawful rezone decision; (4) the County had absolutely no legitimate purpose or interest in twice issuing unlawful and virtually unreviewable decisions that lacked any support in the record; and (5) Manna incurred delay damages from the County's action in an amount to be proven through pretrial discovery. We find no error.

Manna made clear in its rezone application that it was currently seeking only a zoning reclassification and that no specific development activities were currently proposed. Manna identified no prospective business relationship with any party and it repeatedly insisted in both its application and contemporaneous environmental checklist

that the rezone was unrelated to any development project. Manna's manager, Tiffany Doty, verified these facts in her deposition testimony submitted with the County's summary judgment motion. She testified Manna was only seeking rezone approval to allow for future creation of three-acre lots, and that between the time of the first rezone denial in May 2007 and the rezone approval in February 2009, Manna had no written contract or agreement of any kind with any developer. Thus, no agreement or business relationship was terminated or severed because of the Board's denial of the rezone. Ms. Doty also said that although Manna had stayed in touch with some potential investors and developers prior to the rezone denial, nothing occurred with respect to the property after the rezone was approved. Manna had not applied for a subdivision of its property into three-acre lots, nor did it apply for any building or development permits on the property. Manna provided no contrary evidence in its response to the County's summary judgment motion.

Thus, as argued by the County, Manna failed to produce evidence of the first two elements—existence (and knowledge by the County) of a valid contractual relationship or business expectancy with which the County could interfere or delay. This renders all other facts immaterial with respect to the additional elements requiring the County's intentional interference, improper purpose or improper means, and proximate causation of

24

damages (of which Manna shows none in any event). *Young*, 112 Wn.2d at 225; *Boyce*, 71 Wn. App. at 665.

The case Manna primarily relies on, *Pleas v. City of Seattle*, is distinguishable. There, the City was held liable for intentional interference with developer Parkridge's business expectancy because it acted with an improper purpose (political motives and favoritism to a neighborhood group), and by improper means (arbitrary delay) in refusing to grant necessary environmental and building permits for a high-rise apartment project that was allowed under existing zoning regulations. *Pleas*, 112 Wn.2d at 796. Part of the delay was also attributable to the city council granting an opposing neighborhood group's "downzone" application (filed after Parkridge applied for permits) that the court ruled was "unreasonable, arbitrary and capricious and therefore void." *Id.* at 797. Due to the delays, Parkridge incurred ascertainable damages for lost profits, loss of favorable financing, increased construction costs due to inflation, and the costs of an environmental impact statement discarded by the City. *Id.* at 799.

Here, in contrast to *Pleas* where the developer applied for specific project permits allowed under existing zoning, Manna only applied for a rezone to possibly facilitate future, but unspecified, development plans. Unlike the developer in *Pleas* who incurred actual damages, Manna did not identify any business expectancy of pecuniary value—no

business relationship, contract, or development project. All the County knew was that Manna wanted *it* to approve a rezone. On these facts, only after Manna received its R-3 rezone in February 2009 could it stand in similar shoes to the developer in *Pleas*. But the Board acted expeditiously—within two weeks of the court's order—to enact the ordinance granting Manna's rezone. Since there was no identified contract, permit, or contemplated development activity (either pre- or post-ordinance), the County did nothing to interfere with or delay any business expectancy.

Manna's other cited interference with a business expectancy cases are likewise distinguishable because they involved delay of identified projects. *Westmark Dev. Corp.*, 140 Wn. App. at 558-63 (city interfered with business expectancy by acting with improper purpose in singling out developer's apartment project and using improper means by unreasonably delaying original permit decision); *City of Seattle v. Blume*, 134 Wn.2d 243, 947 P.2d 223 (1997) (city delayed processing of developer's master use permit for office building/research facility designed in accord with current zoning regulations). Two other cases cited by Manna are inapposite because they are not interference with business expectancy cases. *Wilson*, 122 Wn.2d at 823 (claim under RCW 64.40.020); *Callfas v. Dep't of Constr. & Land Use*, 129 Wn. App. 579, 120 P.3d 110 (2005) (claims under 42 U.S.C. § 1983 and RCW 64.40.020).

We conclude that the trial court did not err in granting summary judgment

dismissal of Manna's tortious interference and tortious delay claims.

*Attorney Fees.* Attorney fees may be awarded when authorized by a contract, a

statute, or a recognized ground in equity. *Fisher Props., Inc. v. Arden-Mayfair, Inc.,* 106

Wn.2d 826, 849-50, 726 P.2d 8 (1986). RCW 64.40.020(2) provides: "The prevailing

party in an action brought pursuant to this chapter may be entitled to reasonable costs and

attorney's fees."

After prevailing on summary judgment, the County filed a motion and

accompanying affidavit of counsel (with billing timesheets) requesting an award of

$21,496.50 in attorney fees and $1,665.99 in costs. The County's lawyer did not attempt

to segregate fees attributable solely to the RCW 64.40.020 claim. Manna argued that the

County was required to do so and that any fee award must be limited to those the County

could actually demonstrate were related to the RCW 64.40.020 claim. The County's

lawyer disagreed but suggested if fee segregation were appropriate, perhaps 10 percent to

20 percent of the time billed would fall outside of the RCW 64.40.020 claim.

The trial court's order awarding attorney fees states in its entirety:

Kittitas County, as the prevailing party under RCW 64.40.020, is awarded
judgment for $21,496.50 in attorney fees. The request for costs is denied
because the costs requested do not qualify as court costs.

27

CP at 1531.

Manna again contends the trial court erred in failing to require the County to segregate its fees attributable only to the RCW 64.40.020 claim. We agree.

"If attorney fees are recoverable for only some of a party's claims, the award must properly reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues." *Mayer v. City of Seattle*, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000); *accord Dice v. City of Montesano*, 131 Wn. App. 675, 690, 128 P.3d 1253 (2006). A court is not, however, required "to artificially segregate time . . . where the claims all relate to the same fact pattern, but allege different bases for recovery." *Ethridge v. Hwang*, 105 Wn. App. 447, 461, 20 P.3d 958 (2001) (citing *Blair v. Wash. State Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987)). The party claiming an award of attorney fees has the burden of segregating its lawyer's time. *Loeffelholz v. Citizens for Leaders With Ethics & Accountability Now*, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004).

Although our review of an attorney fee award is for abuse of discretion, the trial court must nevertheless calculate the fees using the lodestar method of analysis, and it must enter findings of fact and conclusions of law supporting its decision to award fees. *Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632 (1998). Such a record is

28

necessary for an appellate court to review the award. *Bentzen v. Demmons*, 68 Wn. App. 339, 350, 842 P.2d 1015 (1993). When a trial court fails to create the appropriate record, the remedy is to remand for entry of proper findings and conclusions. *Mahler*, 135 Wn.2d at 435.

Such is the case here. The court did not enter any findings. Nor did it require the County to segregate out its lawyer's time unrelated to the RCW 64.40.020 claim. We observe that while the County's billing entries are typically general in nature, some entries do specify work on non-RCW 64.40.020 claims.

Consistent with the above-cited cases, we vacate the attorney fee award and remand for the superior court to determine the appropriate amount of attorney fees to be awarded to the County as prevailing party under RCW 64.40.020.

*Holding.* The summary judgment order dismissing Manna's lawsuit is affirmed. The attorney fee award is vacated and remanded consistent with this opinion.

_____
Kulik, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Siddoway, J.

29