[No. 3791-6-III. Division Three. October 13, 1981.]

MAX HUNT, ET AL, *Respondents,* v. RONALD
L. ANDERSON, *Appellant.*

*Eugene R. Oliver* and *Burgeson, Grenier & Oliver,* for appellant.

*Robert L. Parlette* and *Davis, Arneil, Dorsey, Kight & Parlette,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Robert V. Jensen* and *Charles B. Roe, Jr., Assistants,* amici curiae.

ROE, J.—This case results from an unsettled dispute among neighbors who are adjacent property owners on Lake Chelan. The lots are generally 45 to 50 feet wide. The plaintiffs Max and Edythe Hunt are owners of lot 16, and Merle and Joanne Hanson of lot 18 of Woodland Park Plat. Defendant Ronald Anderson owns lot 17, located between the plaintiffs' lots. Plaintiffs have permanent vacation homes of substantial value on their lots which are set back 40 to 45 feet from the high water mark of Lake Chelan. This area is subject to the Shoreline Management Act of 1971, RCW 90.58.[1]

By the summer of 1978 a septic tank and drain field were installed on Anderson's lot. Later, Anderson's friend, Duane Daling, placed a 60-foot mobile home on the Anderson lot, set back approximately 20 feet from the high water mark. Later, a deck, costing over $1,000, was added to it. Either Mr. or Mrs. Daling drew an "as built" map of the drain field showing it to be 35 feet on a 45-foot lot and filed it with the county. But Daling testified the actual width of the drain field was 25 feet.

Placement of the mobile home obstructed the view of both plaintiffs. Attempts to settle this dispute failed; plaintiffs sued seeking removal or relocation of the mobile home.

The court ordered Anderson to move the mobile home and to determine the exact location of the drain field. The parties were ordered to pay their own fees and costs.

---

[1] RCW 90.58.030(2)(d) defines shorelines to include wetlands, which are defined in RCW 90.58.030(2)(f).

Defendant Anderson appeals those two orders. Plaintiffs cross–appeal the court's determination that a private road at the rear of the lots running parallel to the lake is not a street and also seek attorney's fees and costs.

Chelan County promulgated General Shorelines Use Activities Regulations in accordance with the directives of the Shoreline Management Act of 1971 (SMA), RCW 90.58, adopted by the Department of Ecology. All development and substantial development on the shorelines of the state undertaken after June 1, 1971, must conform to the SMA. RCW 90.58.140(1), (2); *Hayes v. Yount,* 87 Wn.2d 280, 288, 552 P.2d 1038 (1976). In *English Bay Enterprises, Ltd. v. Island County,* 89 Wn.2d 16, 20, 568 P.2d 783 (1977), the court stated:

> The Shoreline Management Act of 1971 is to be broadly construed in order to protect the state shorelines as fully as possible. *See* RCW 90.58.900. A liberal construction of the act is also mandated by the State Environmental Policy Act of 1971.

The parties devoted much of their briefs to the question whether placement of the mobile home on the defendant's lot constitutes a substantial development. If a substantial development permit were required, any such development without a permit or variance would be in violation of the Shoreline Management Act of 1971, and the General Shorelines Use Activities Regulations adopted by Chelan County. However, under the statute and the cases previously cited, it is immaterial whether a substantial development permit was required. The placing of the mobile home, the addition of a septic tank and drain field, and the construction of the deck within the 200–foot jurisdictional boundary of the Shoreline Management Act of 1971 constitutes development. RCW 90.58.140(1).[2]

---

[2] "(1) No development shall be undertaken on the shorelines of the state except those which are consistent with the policy of this chapter and, after adoption or approval, as appropriate, the applicable guidelines, regulations or master program."

A development is: "a use consisting of the construction or exterior alteration of

■ The location of the mobile home and deck were found to inhibit the aesthetic qualities, the view, charm and beauty of the plaintiffs' homes. The mobile home substantially reduces the fair market value of adjacent homes. Regulation 10.8 of the General Shorelines Use Activities Regulations[3] demonstrates an intent to protect the use of both public and private property preventing obstruction of scenic views and vistas.

In a leading case respecting the rights of adjoining landowners under the SMA, *Department of Ecology v. Pacesetter Constr. Co.*, 89 Wn.2d 203, 211–12, 571 P.2d 196 (1977), the court stated: "Many cases hold protection of aesthetic values alone justify the exercise of police power without payment of compensation." (Citations omitted.) The court held at page 212:

> We need not . . . rest our decision on the need to protect aesthetics alone. Here, the underlying findings establish that the loss of view substantially reduces the values of the shoreline properties of the Huntleys and their neighbors, thus entitling them to protection against that economic loss without payment by the State of just compensation.

(Citations omitted.)

The prior location of plaintiffs' homes on either side of defendant's lot created a voluntary setback to which

---

structures; dredging; drilling; dumping; filling; removal of any sand, gravel or minerals; bulkheading; driving of piling; placing of obstructions; or any project of a permanent or temporary nature which interferes with the normal public use of the surface of the waters overlying lands subject to this chapter at any state of water level;" RCW 90.58.030(3)(d).

A substantial development is: "any development of which the total cost or fair market value exceeds one thousand dollars, or any development which materially interferes with the normal public use of the water or shorelines of the state; except that the following shall not be considered substantial developments for the purpose of this chapter:" RCW 90.58.030(3)(e).

[3]Regulation 10.8, General Shorelines Use Activities Regulations:

"The location and design of all proposed structures shall be such that obstruction of scenic views and vistas is minimized. This shall apply to protection of views from both public and private property. The administrative authority may require modification of proposed projects to insure this end."

defendant's development must conform. The facts here are similar to *Pacesetter,* which dealt with view interference by single–family residences with threatened devaluation of the neighbors' properties. In both cases, the locations of the offending homes were found to be inconsistent with the public policy of the Shoreline Management Act of 1971. The *Pacesetter* court developed a setback requirement in holding the lakeward house adversely affected the neighborhood, ordered removal of the development on Lake Washington, and prohibited construction closer to the lake than the neighboring houses. *Pacesetter* explained at pages 210–11:

> [T]he historic setback requirements in the general area of the Pacesetter lakeward lot are restrictions not only for the benefit of Pacesetter's neighbors but also for the benefit of Pacesetter itself and its potential grantees, serving to protect the view from Pacesetter's property. For all the record shows, the reciprocal protection afforded Pacesetter may substantially diminish or completely offset whatever diminution in value Pacesetter might otherwise sustain by being compelled to comply with the court's decree and SMA.

Defendant Anderson discounts the *Pacesetter* case and relies on *Portage Bay–Roanoke Park Community Council v. Shorelines Hearings Bd.,* 92 Wn.2d 1, 593 P.2d 151 (1979). Both *Pacesetter* and the case at hand deal with protruding residences which adversely affect their neighbors. These cases find a reduction of property values and refined master programs which protect both views and private property rights. These factors were absent in *Portage Bay* and were the basis on which *Pacesetter* was distinguished. *Portage Bay* concerned not the obstruction of views from a continuous line of houseboats on either side, but rather view intrusion of houses behind.

In affirming the denial of a building permit because of aesthetic intrusion and interference with property values, our Supreme Court has recognized environmental standards are often not susceptible of precise quantification. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 66, 578 P.2d 130

(1978). In *Portage Bay,* the appellant sought to overcome the finding of the administrative board which permitted the houseboats. This case is the reverse. The court found a violation of the SMA. The trial court here properly followed *Pacesetter* in determining the plaintiffs' homes created a setback line requiring defendant to place the mobile home in an area which will not disturb plaintiffs' view or damage their property values.

Pursuant to the authority of the SMA, Anderson must move or remove the mobile home.

 A trial court must make findings concerning all the material issues. *Ford v. Bellingham–Whatcom County Dist. Bd. of Health,* 16 Wn. App. 709, 558 P.2d 821 (1977). If the findings of the trial court are incomplete or indecisive, an appellate court may look to the oral decision of the trial court to eliminate speculation as to the basis for the trial court's decision. *Schoonover v. Carpet World, Inc.,* 91 Wn.2d 173, 588 P.2d 729 (1978).

The court made no finding the septic tank system on Anderson's property violated Chelan County ordinances. It found the actual location of the drain field was not established. In its oral decision, the court stated the system "probably does" comply with the Chelan County code. The enforcement of section 15 of the Chelan–Douglas County Health District Regulations for onsite sewage in this state is given to the local health board by RCW 70.05.060. No private enforcement of the regulations is provided. The trial judge had no discretion to order the drain field uncovered since the findings did not find a violation. The findings merely stated *if* the defendant was in violation, he must comply or request a variance. There was not sufficient evidence to determine whether the drain field complied or not. We therefore reverse the order of the trial court which requires defendant to uncover the septic tank and drain field system on his property.

The determination of whether a road, dedicated as a "private" road to Chelan County which the County uses to enforce side yard requirements, is a street pursuant to the

Chelan County Zoning Code is not necessary for the disposition of this case. We therefore decline to decide the issue.

As to attorney's fees and costs, RCW 90.58.230 states, "In addition to such relief, including money damages, the court in its discretion *may* award attorney's fees and costs of the suit to the prevailing party." (Italics ours.)

No abuse of judicial discretion was claimed by the plaintiffs. Instead they contend the trial judge did not award fees and costs because he found no malicious intent on the part of the defendant and further because defendant was abetted in his action by the omissions of the Chelan County officials. The trial judge did not say malicious intent was necessary to award fees and costs, but chose not to award any due to the circumstances of this case. This is a matter within the discretion of the trial judge and absent a showing of an abuse, will not be overturned.

The judgment of the trial court is affirmed except as to that portion of the judgment requiring excavation of the septic tank and drain field.

McINTURFF, C.J., and MUNSON, J., concur.