FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 52

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HAL MOORE and MELANIE MOORE, husband and wife; and LESTER KRUEGER and BETTY KRUEGER, husband and wife, | No. 41557-7-II |
| Appellants, | Consolidated with |
| | No. 44377-5-II |
| v. | |
| STEVE'S OUTBOARD SERVICE, a sole proprietorship operating in Washington; STEVEN LOVE and MARY LOU LOVE, husband and wife and the marital property together composed; and MASON COUNTY, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, C.J. — In this consolidated appeal, Hal and Melanie Moore and Lester and Betty Krueger (collectively, the Moores) appeal two trial court orders that (1) dismissed their claims against Steven and Mary Lou Love and Steve's Outboard Service (SOS), (2) awarded attorney fees to the Loves, and (3) refused to consider additional evidence after we remanded the Moores' first appeal to the trial court to enter more complete findings of fact and conclusions of law. The Moores had sued SOS and the Loves, asserting claims of nuisance in fact, nuisance per se, and violations of the Shoreline Management Act (SMA).[1] The Moores now argue that the trial court erred by (1) refusing to consider additional evidence after remand, (2) entering findings of fact unsupported by substantial evidence, (3) concluding that the Moores showed no nuisance in fact, (4) concluding that the Moores showed no nuisance per se, and (5) granting

_____
[1] Chapter 90.58 RCW.

attorney fees. We reverse the trial court's dismissal of the Moores' nuisance per se claim and its

attorney fee award and remand for further proceedings. We affirm the trial court's dismissal of

the Moores' other claims.

FACTS

Steve's Outboard Service (SOS) is an outboard motor repair sole proprietorship that

Steven Love and Mary Lou Love have owned since 1994, and that Steven[2] has operated from

their home along State Route (SR) 106, on the south shore of Hood Canal in Mason County. In

2006, the Moores sued SOS and the Loves, alleging that SOS's operations constituted a nuisance

and a violation of the Shoreline Management Act.[3]

A.     The *Moores' Case at Trial*

The Moores presented two witnesses during this bench trial: Betty Krueger and Melanie

Moore.

1. *Betty Krueger*

Krueger testified that SOS affected her by generating smoke, fumes, and noise from

revving engines. Krueger testified that smoke and fumes from SOS reached her property. She

also testified that SOS caused traffic safety hazards because customers and delivery vehicles

used the SR 106 right-of-way, although she admitted that no serious accidents had occurred on

---

[2] For purposes of clarity, we refer to Hal and Melanie Moore and Lester and Betty Krueger collectively as "the Moores." We refer to Steven Love and Mary Lou Love as "the Loves." We refer to individuals by their first names when referring to them individually. We intend no disrespect.

[3] The Moores also sued Mason County for failure to enforce the SMA against SOS. But the trial court dismissed the Moores' claim against Mason County on summary judgment. The Moores assign no error to this dismissal.

SR 106. Krueger testified that SOS made periodic noise when revving boat engines, and operating a tractor with a beeping device to bring boats onto the Loves' property. Krueger also testified that she no longer used a patio on the side of her house that faced SR 106 because of the noise SOS generated. Krueger admitted that her caretaker frequently used a gas powered leaf blower and pressure washer that made noise. Krueger testified that SOS's customers and delivery trucks used the SR 106 right-of-way, potentially impeding traffic and causing safety concerns.

The Moores submitted photographs showing several plumes or hazes of smoke, purportedly from SOS. Krueger testified that she saw such smoke in the spring, summer, and fall, and that she periodically smelled exhaust fumes from the smoke. She further testified that she was not seeking damages, but only wanted SOS's operation stopped.

2. *Melanie Moore*

Melanie Moore owned a home on SR 106, across the street from the Loves' property, where she lived during the summer. Although Moore provided testimony regarding the frequency and volume of the noise that SOS produced; the trial court found that this testimony was not credible, and we defer to that determination of credibility.

Moore testified that although she had heard the beeping of SOS's tractor, Steven had since disengaged the beeper. Moore testified that on windless summer days she could see smoke and smell fumes SOS generated. Moore testified that smoke and fumes occasionally presented a problem on her property.

Moore testified to many concerns she had regarding SOS's use of SR 106 and this roadside. And she testified that she wanted only to prevent SOS from operating out of the Loves' property.

3. *Evidence Regarding Permitting*

Because the Moores claimed nuisance per se, they submitted documentary evidence regarding various permits that Steven may or may not have obtained. This included a shoreline permit application that Steven filed in 1994 to build a 30-by 45-foot metal building on his property, a letter from Steven withdrawing this application, and a letter from Mason County acknowledging Steven's withdrawal letter. The Moores also submitted building permit applications filed in 1994 that requested permits to replace a carport and to remodel a storage shed.

The Moores submitted a report from Mason County entitled "Case Activity Listing." Ex. 7. The Case Activity Listing listed the permits that Mason County employees believed the county had granted to Steven over the years, and briefly described those permits. This Case Activity Listing showed that the County received and investigated a complaint about SOS's operation in 2003. Additionally, the Case Activity Listing stated that Mason County had previously granted Steven two building permits for a single metal shop. However, Steven had withdrawn his metal shop permit applications while they were pending.

The Case Activity Listing also stated that subsequent to granting the metal shop building permits, Mason County granted Steven both a 1994 carport permit and a permit for Steven to build an addition to the storage shed. Mason County granted these two permits for private use under the old Uniform Building Code.

4

The Case Activity Listing stated that the carport permit revealed that the carport had replaced another structure. However, because Mason County had not granted the two older metal shop permits, it could not find physical copies of these permits. Nonetheless, Mason County assumed that the planner who had reviewed the carport permit application approved the carport permit on grounds that the structure was of equal or lesser intensity than the permitted metal shop it had replaced. The Case Activity Listing stated that SOS could continue operating as an existing cottage industry, because SOS's operation had not substantially changed since its start in 1994.

B.     *The Loves' Case at Trial*

1. *The Loves' Neighbors*

The Loves presented the testimony of three neighbors who lived near the Loves' property: James David, William Jacobs, and Elliot Gordon.

David testified that he generally did not use the SR 106 side of his property due to the road noise. He testified that SOS only ran engines for "minutes" and that SOS's operations bothered neither David nor his guests. 1 Verbatim Report of Proceedings (VRP) at 125. David testified that motorcycles on SR 106 produced the loudest source of noise, while SOS was about as loud as the Kruegers' leaf blower. He further testified that SOS produced no fumes.

Jacobs testified that the noise, fumes, or smoke from SOS had never bothered him. Jacobs confirmed that the Kruegers used a leaf blower daily when leaves were falling. Jacobs had not observed any traffic safety problems at SOS.

Gordon testified that SOS produced no odors or fumes. Gordon testified that just about everyone parked their boats on the right-of-way. Gordon testified that he knew of no traffic

safety problems caused by SOS, and that Steven used safety precautions when moving boats into the Loves' shop. Gordon also testified that SOS's engine noises did not bother him, and that motorcycles on SR 106 bothered him more.

2. *SOS's Customers*

The Loves presented the testimony of several of SOS's customers who had their outboard motors serviced at SOS. These customers uniformly testified that Steven was highly safety conscious, never caused traffic problems, had a procedure to quickly remove boats from the road, and used appointments to ensure that SOS was never overwhelmed with boats. Two customers testified that SR 106 regularly had numerous boats, delivery trucks, and other vehicles parked on its shoulder. Two customers testified to their ability to talk to Steven in his shop with the motors running.

3. *Steven Love*

Steven testified on his own behalf. Steven testified that he worked on motors usually between 10:30 AM and 5:00 PM, that he typically ran motors for 15 minutes per day at the most, and that he ran the motors on idle 95 per cent of that time. He also testified that he generally ran motors on open throttle for no more than 30 seconds.

Regarding smoke production, Steven testified that while he used to do a "fogging" procedure that produced a lot of smoke, he had not done it since 2000. 2 VRP at 323-24. He testified that two photos showing smoke at his property occurred before 2001. Steven also testified that while he did not do anything in his shop that caused excessive smoke, he sometimes used a wood stove that made smoke.

Regarding the permitting of the structures on his property, Steven testified that he replaced a carport attached to his house with a larger carport. Steven testified that as far as he knew, his contractor had obtained the proper permits for the carport. Steven also testified that he had no awareness of any shoreline permit for SOS.[4]

Steven testified that no one informed him that SOS was out of compliance with any law. Steven further admitted that his customers used the SR 106 right-of-way when delivering boats, but stated that he did not require them to do so. Steven testified that he stored boats on his property behind his shop or in his carports.

C.    *The Trial Court's Decision*

The trial court issued findings of fact and conclusions of law. The trial court concluded, "Plaintiffs have not shown by a preponderance of the evidence that Defendants' business is a nuisance nor that they are entitled to injunctive relief under any of the theories presented." Clerk's Papers (CP) at 114-15. The trial court consequently dismissed the Moores' claims.

After the trial court issued its decision, the Loves moved for, and were awarded, attorney fees in the amount of $36,034.69. The Moores appealed. After this first appeal, we remanded for the trial court to produce a more complete set of findings and conclusions.

D.    *Post-Appeal Procedural History*

After remand, the Moores petitioned the trial court to reopen the case to enter a series of public records regarding the permitting of SOS. The Moores wanted to introduce this evidence

---

[4] Based on this testimony, the Moores argue, "It was conceded at trial that Respondents did not have shoreline permits for their business operations." Br. of Appellant at 20. But Steven simply testified that he was not aware of any shoreline permit. The Loves did not concede that no permit existed, nor did his counsel.

7

to lend further support to their claims of nuisance in fact and nuisance per se. The trial court denied the Moores' motion to reopen.

The trial court entered amended and supplemental findings of fact and conclusions of law. The trial court entered numerous factual findings to support its conclusions that SOS's operation did not constitute a nuisance because, on balance, SOS's operation did not constitute an unreasonable burden on the Moores' use and enjoyment of their land.

The trial court made no findings as to whether SOS operated lawfully. Instead, the trial court found that SOS operated primarily from a rebuilt carport on the Loves' property that was permitted by Mason County. The trial court also found that the County took no action on a 2003 complaint regarding operation of the boat repair business. The trial court found that Mason County allowed SOS to continue as a cottage industry.

The trial court concluded that whether SOS operated lawfully was irrelevant to both the nuisance in fact and nuisance per se claims. The trial court supported this conclusion with its statement that both theories of nuisance require a plaintiff to establish an unreasonable interference with their use and enjoyment of land, which the Moores had failed to prove.

The trial court further concluded that the Land Use Petition Act (LUPA)[5] statute of limitations barred the Moores' nuisance per se claim, because Mason County had approved SOS to operate as a "cottage industry." CP at 240-42. The trial court stated in its conclusions that "[i]n order to prevail on a claim of nuisance *per se*, Plaintiffs here would need to belatedly have a Mason County interpretive decision regarding application of land use regulations to the Loves'

---

[5] Chapter 36.70C RCW.

8

property declared improper . . . ." CP at 241-42. The trial court reduced the Loves' attorney fee award from $36,034.69 to $28,907.44.

In addition to appealing the judgment dismissing their claims and awarding attorney fees to the Loves, the Moores appeal the trial court's order refusing to reopen the case. *See generally,* I Br. of Appellants; III Br. of Appellants at 4; SCP at 11-12. We consolidated these appeals.

ANALYSIS

I. MOTION TO REOPEN FOR INTRODUCTION OF ADDITIONAL EVIDENCE

After remand, the Moores moved the trial court to admit evidence that SOS lacked the proper permits to operate and was, therefore, a nuisance per se. Citing *Rochester v. Tulp,* 54 Wn.2d 71, 337 P.2d 1062 (1959), the Moores argue that the trial court abused its discretion in refusing to reopen the case for the introduction of this new, dispositive evidence. We disagree.[6]

A trial court's ruling on whether to reopen a case for the introduction of new evidence is reviewed for an abuse of discretion. *In re Ott,* 37 Wn. App. 234, 240, 679 P.2d 372 (1984). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Ameriquest Mortg. Co. v. Office of Attorney General,* 177 Wn.2d 467, 478, 300 P.3d 799 (2013).

The Moores cite *Rochester* to support their argument that the trial court abused its discretion by refusing to reopen for introduction of dispositive evidence. In *Rochester,* a

---

[6] Citing RAP 7.2, the Loves argue that the trial court is prohibited from reopening the case after an appeal has started, absent explicit authorization from this court. But the decision to grant a motion to reopen after a remand is within the trial court's discretion. *Zink v. City of Mesa,* 162 Wn. App. 688, 706, 256 P.3d 384 (2011); *Sweeny v. Sweeny,* 52 Wn.2d 337, 339, 324 P.2d 1096 (1958).

defendant's uncontroverted testimony led the trial court to rule that the statute of limitations required dismissal of a plaintiff's conversion claim. 54 Wn.2d at 71-74. After trial, records came to light directly disproving the defendant's testimony and proving that the statute of limitations had not expired. 54 Wn.2d at 73-74. Our Supreme Court held that the trial court abused its discretion when it denied the plaintiff's motion to reopen to introduce this evidence, because the evidence was dispositive and because the plaintiff was not at fault for failing to discover the evidence before trial. 54 Wn.2d at 74.

*Rochester* is distinguishable. Here, the Moores offer no explanation for failing to produce the permitting evidence at trial. At the Moores' behest, the trial court admitted evidence concerning SOS's permitting. After remand, the Moores moved the trial court to reopen to admit public records regarding these same permitting issues; records that had been in existence years before the trial. The Moores do not describe any prior efforts to acquire these public records before the trial, nor do they allege a lack of knowledge as to these records' existence. It is not an abuse of discretion for a trial court to refuse to reopen a case to allow a party to belatedly submit evidence they could have, but failed to produce at trial. The trial court did not abuse its discretion in refusing to reopen the case after appeal.

## II. SUBSTANTIAL EVIDENCE TO SUPPORT FINDINGS

The Moores argue that substantial evidence does not support the trial court's findings of fact regarding SOS's impacts on their property. Specifically, the Moores argue that substantial evidence does not support the trial court's findings regarding noise, smoke, fumes, and traffic impacts. We disagree.

10

Where the trial court considers evidence in a bench trial, we review the findings of fact for substantial evidence. *Saviano v. Westport Amusements, Inc.*, 144 Wn. App. 72, 78, 180 P.3d 874 (2008). Substantial evidence is evidence sufficient to persuade a fair-minded person that the finding is true. *Saviano*, 144 Wn. App. at 78. The challenging party bears the burden of showing that the record does not support the challenged findings. *Saviano*, 144 Wn. App. at 78. We review the evidence in the light most favorable to the prevailing party and we defer to the trial court regarding witness credibility and conflicting testimony.[7] *City of University Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001).

We hold that substantial evidence supports the findings of fact regarding SOS's production of noise, fumes, and traffic congestion.

A.    *Findings Regarding Noise*

The Moores argue that substantial evidence does not support the trial court's findings regarding the impact of SOS's noise on their property: (1) the outboard motor noise from SOS was not deafening, even up close; (2) Krueger characterized the noise's frequency as periodic, and that Krueger heard SOS's noise only when she was outside her home, when she got her mail, and when she worked in her flower gardens; (3) Moore's testimony regarding the frequency and volume of the noise lacked credibility; (4) none of the Moores' neighbors, particularly David, Jacobs, and Gordon, had any problems with SOS's noise; (5) the beeping of SOS's tractor had not occurred in the last couple of years; (6) the motors on boats and jet skis and leaf blowers made noise in the same region as SOS; and (7) the motor vehicle traffic on SR 106, including

---

[7] The Moores argue that the trial court misapplied the preponderance of the evidence standard, suggesting that we should review the findings under a preponderance of the evidence standard. But we review findings of fact for substantial evidence. *Saviano*, 144 Wn. App. at 78.

motorcycles, produced the most significant noise source in the area. We hold that substantial evidence supports all of these factual findings.

Two customers testified to their ability to talk to Steven in his shop with the motors running. Krueger's own testimony supported that she heard the noise "periodically," as well as the specific places that she heard the noise. 1 VRP at 16. David, Jacobs, and Gordon all testified that the noise did not bother them at all. Krueger admitted that SOS had not used the tractor beeper for years, and that she regularly used a leaf blower that made noise. Krueger's use of the leaf blower was confirmed by two neighbors' testimonies. Four witnesses' testimonies all confirmed that SR 106 noise was significantly louder than noise produced by SOS.

The Moores argue that the Loves' witnesses lived farther away from SOS than the Moores, or lived there less frequently than the Kruegers, such that the Loves' witnesses did not provide substantial evidence to support the trial court's findings regarding noise. The Moores also attack the trial court's determination that Krueger's testimony regarding the noise's duration and volume lacked credibility. The Moores' argument is actually a request for us to reweigh the evidence, couched in terms of a substantial evidence argument. We do not reweigh evidence, but defer to the trial court regarding witness credibility. *City of University Place*, 144 Wn.2d at 652. Substantial evidence supports the trial court's findings relating to noise.[8]

---

[8] The Moores argue that the trial court erred by focusing on the duration of the use of SR 106, instead of focusing on its repetitiveness, when determining nuisance in fact. The Moores do not support this proposition with any legal authority, and thus we do not consider it. *See Escude v. King County Public Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003).

B.   *Findings Regarding Smoke and Fumes*

The Moores also argue that substantial evidence does not support the trial court's findings regarding the smoke and fumes produced by SOS: (1) while SOS's running of motors produced some smoke, SOS ran motors for only 15 minutes per day, and was a clean and environmentally conscious company; (2) the smoke and fumes did not bother the other adjacent neighbors, including David, Jacobs, and Gordon; and (3) the area had other sources of smoke at times. Substantial evidence supports all of these factual findings.

A great deal of testimony supports the trial court's findings regarding the smoke and fumes SOS produced. David, Jacobs, and Gordon all testified that the smoke did not bother them, and/or that they had never even noticed it. Krueger testified that the motors ran "just periodically." 1 VRP at 16. David testified that he heard the motors for only minutes a day. Jacobs testified that he heard engines revving up "once in a while." 1 VRP at 142. Steven testified that in an entire day he typically ran motors for 15 minutes at the most, 95 per cent of which was on idle. He also testified that he generally ran motors on open throttle for no more than 30 seconds. Testimony clearly established that the busy SR 106 was nearby, producing potential alternative sources of smoke. Steven testified that he and the Kruegers had wood stoves which caused a great deal of smoke at times.

It is true that Moore testified that smoke and fumes occasionally presented a problem on her property, and that Krueger testified that smoke and fumes from SOS reached her property. It is also true that the Moores submitted photographs showing several plumes or hazes of smoke, purportedly from SOS. Thus the testimony conflicted, and the trial court resolved the conflict in

favor of the Loves. We defer to that decision. *City of University Place*, 144 Wn.2d at 652. Substantial evidence supported the trial court's findings regarding smoke and fumes.

C.     *Findings Regarding Traffic Impacts*

The Moores further argue that substantial evidence failed to support the trial court's findings regarding SOS's effect on traffic on SR 106: (1) that no accidents had occurred on SR 106 for the previous 20 years; (2) that SOS's operation was low volume; (3) that SOS's operation only had brief use of the road and that this use did not deviate from SR 106's typical usage; (4) that SOS's use of SR 106 obstructed neither traffic, nor anyone else's use of SR 106. We hold that substantial evidence supports all of these factual findings.

Krueger testified that no serious accident had occurred on SR 106. Krueger, two neighbors, and a customer all testified that SR 106 had a great deal of traffic other than that produced by SOS. Gordon testified that no one, including SOS, had caused traffic congestion problems, and that "everybody parks boats on the right-of-way." 1 VRP at 177. Two customers testified that SR 106 regularly had numerous boats, delivery trucks, and other vehicles parked on the shoulder.

Steven testified that he stored boats on his property behind his shop or in his carports, rather than on SR 106. Gordon testified that he knew of no traffic safety problems caused by SOS, and that Steven took safety precautions when moving boats. Many of SOS's customers confirmed that Steven was highly safety conscious, testifying that SOS never caused traffic problems, and had procedures to quickly move boats off of SR 106 so as to ensure that SOS was never overwhelmed with boats.

Both Krueger and Moore testified that SOS's customers and delivery trucks used the SR 106 right-of-way, potentially impeding traffic and causing safety concerns. However, the trial court resolved this conflict in favor of the Loves and we defer to that decision. *City of University Place*, 144 Wn.2d at 652. Substantial evidence supports the trial court's findings regarding SOS's traffic impacts.

### III. NUISANCE IN FACT

The Moores next argue that the trial court's factual findings fail to support the conclusion that SOS was not a nuisance in fact. We disagree.

We review the trial court's conclusions of law de novo to see if the findings of fact support them. *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562 (2002). When the trial court's findings are susceptible of two constructions, one that supports the conclusions of law and one that does not, "the findings of fact must be construed in a manner which will support the trial court's conclusions of law." *Lincoln Shiloh Assoc., Ltd. v. Mukilteo Water Dist.*, 45 Wn. App. 123, 131, 724 P.2d 1083 (1986).

RCW 7.48.120 defines nuisance in Washington, and provides:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

A nuisance in fact exists if one owner's use of land *unreasonably* interferes with another's use and enjoyment of the other's own land. *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998). A trial court determines reasonableness by balancing the rights, interests, and

15

convenience of the parties. *Jones v. Rumford*, 64 Wn.2d 559, 563, 392 P.2d 808 (1964). Such balancing requires consideration of the social utility of the defendant's conduct, the gravity of the harm to the plaintiff, and the character of the neighborhood in which the activity is located. *Highline School Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 17-18 n.7, 548 P.2d 1085 (1976). This is an objective analysis based on the standards of a "person of ordinary and normal sensibilities." *Riblet v. Ideal Cement Co.*, 57 Wn.2d 619, 622, 358 P.2d 975 (1961).

Here, the trial court concluded that, on balance, SOS's operations did not create an unreasonable interference with the Moores' use and enjoyment of their land. It is clear from the findings that the trial court reached this conclusion after balancing the parties' rights, interests, and conveniences. In addition, the trial court also found that the Moores' land suffered no injury or loss of value.

The trial court supported its conclusion that the noise did not constitute an unreasonable interference by finding that the noise SOS produced was limited in duration and volume, comparable to that of the Kruegers' own leaf blower, and less than the SR 106 noise. The trial court also found that much of Moore's testimony as to the noise lacked credibility.

The trial court supported its conclusion that SOS's smoke production was not unreasonable by finding that SOS's shop was clean, Steven had not intentionally produced significant smoke in conducting SOS's operations since 2000, and other sources of smoke existed in the area. The trial court supported its conclusion that SOS's impact on traffic was not unreasonable by finding that Steven placed great importance on traffic safety, took work only by appointment, and blocked SR 106 for a very limited amount of time, not inconsistent with

regular usage of SR 106.[9] Finally, the trial court supported its legal conclusion that no aspect of SOS's operation constituted an unreasonable interference with the Moores' land on balance by finding that SOS's operations bothered none of the neighbors besides the Moores.

The Moores cite *Davis v. Taylor*, 132 Wn. App. 515, 132 P.3d 783 (2006) for the proposition that courts are obligated to consider the impact on the complaining party's property. But *Davis* addressed whether a farm was protected under right-to-farm laws and did not announce the rule the Moores claim. 132 Wn. App. at 519-23.

The Moores also cite *Riblet v. Spokane-Portland Cement Co.*, 45 Wn.2d 346, 274 P.2d 574 (1954) for the principle that the trial court must base its nuisance in fact conclusion upon the impacts to a particular plaintiff's property, without considering whether the alleged nuisance bothers others in the community. This argument inaccurately interprets *Riblet*. *Riblet* held that the trial court should consider intangible harms in addition to tangible harms, but never suggested that the trial court should measure losses subjectively based on a plaintiff's unique sensibilities. *See* 45 Wn.2d at 354-55.

The Moores also cite *Payne v. Johnson*, 20 Wn.2d 24, 145 P.2d 552 (1944) for the proposition that the trial court must judge a nuisance in fact solely on the impacts to a plaintiff's property without considering whether such impacts are unreasonable. But *Payne* held, "Whether

---

[9] The Moores cite *Park v. Stolzheise*, 24 Wn.2d 781, 167 P.2d 412 (1946) for the proposition that so long as the Moores showed subjective fear due to traffic safety concerns, they have demonstrated a nuisance in fact. But *Park* dealt with the fear of an entire 1940's residential community regarding the potential opening of a mental institution within that community. 24 Wn.2d at 797-98. The Court held that where an entire residential community shared a strong common fear of a proposed land use, the community's fear was per se reasonable, regardless of whether science justified the fear. 24 Wn.2d at 797-98, 800. Thus, *Park* is distinguishable.

appellant's particular use of his property constitutes a nuisance presents the question whether the use to which the property is put is reasonable or unreasonable." 20 Wn.2d at 29.

We hold that the findings of fact support the trial court's conclusion that the Moores did not establish that SOS was a nuisance in fact.

## IV. NUISANCE PER SE

The Moores argue that the trial court erred in (1) concluding that LUPA's 21 day statute of limitations barred the Moores' nuisance per se claim and (2) concluding that the Moores' claim for nuisance per se fails even if SOS operated in violation of law. We agree.[10]

A.    *Improper Application of LUPA*

The Moores argue that the trial court erred in ruling that because the nuisance per se claim would require the trial court to overturn a county determination that SOS could operate, LUPA's 21 day statute of limitations bars the Moores' nuisance per se claim. We agree with the Moores.

We review questions of statutory interpretation de novo. *Manna Funding, LLC v. Kittitas County*, 173 Wn. App. 879, 890, 295 P.3d 1197 (2013), *review denied*, 178 Wn.2d 1007 (2013).

---

[10] The Loves argue that the Moores did not plead nuisance per se in their complaint, and thus this court should not consider the issue. However, the Moores pleaded in their complaint that SOS built significant projects and operated its business without the required permits under the SMA. These pleadings put the Loves on notice that nuisance per se was at issue, and thus adequately pleaded the issue. *See FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.*, 175 Wn. App. 840, 865-66, 309 P.3d 555 (2013); *Jones Associates, Inc. v. Eastside, Properties, Inc.*, 41 Wn. App. 462, 466 n.3, 704 P.2d 681 (1985); *State v. Adams*, 107 Wn.2d 611, 620, 732 P.2d 149 (1987) (Pleadings must give adequate notice; if complaint states facts entitling plaintiff to relief it is immaterial what name the action is called).

LUPA is the only method of judicial review for "land use decisions." RCW 36.70C.030.[11]

LUPA's RCW 36.70C.020(2)[12] defines "land use decisions" as follows:

> "Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals . . . .

LUPA has a 21 day statute of limitations on bringing a claim. [13] RCW 36.70C.040(3).

LUPA's statute of limitations will bar a plaintiff's nuisance claims where such claims require attacking the validity of a local government's land use decision. *Asche v. Bloomquist*, 132 Wn. App. 784, 801, 133 P.3d 475 (2006).

In this case, the trial court ruled that LUPA bars the Moores' claim because Mason County's Case Activity Listing resolved a complaint filed against SOS, stating that SOS could continue to operate at its location as a "cottage industry." Ex. 7. The trial court ruled that in order to prevail in showing illegality without violating LUPA, the Moores would have to have

---

[11] Former RCW 36.70C.030 (2003), *amended by* LAWS OF 2010, 1st Spec. Sess., ch. 7, §38. The amendments have no effect on this case.

[12] Former RCW 36.70C.020 (1995), *amended by* LAWS OF 2010, ch. 59, §1; LAWS OF 2009, ch. 419, §1. The amendments have no effect on this case.

[13] LUPA explicitly exempts from its reach "[l]and use decisions of a local jurisdiction that are subject to review by . . . the shorelines hearings board . . ." RCW 36.70C.030. The Shorelines Hearings Board reviews appeals from "any person aggrieved by the granting, denying, or rescinding of a permit on shorelines of the state." Former RCW 90.58.180(1) (2003), *amended by* LAWS OF 2011, ch. 277, §4; LAWS OF 2010, ch. 210, §37. However, this does not apply to this case, because the Shorelines Hearings Board cannot review a local government's determination that a permit is *not* required. *Toandos Peninsula Ass'n v. Jefferson County*, 32 Wn. App. 473, 485, 648 P.2d 448 (1982). Here Mason County allowed SOS to operate without a permit as a "cottage industry." Ex. 7.

produced an order declaring improper a Mason County interpretive decision relating to the Loves' use of their land.

The trial court erred as a matter of law in ruling that LUPA precludes the Moores' claims for three reasons. First, the Case Activity Listing was the result of a low-level case study summarily dismissing a complaint. This does not constitute a land use decision as defined by LUPA, because Mason County was not determining whether SOS could legally continue to operate on the Loves' property without further permits. Rather, it was summarily dismissing a complaint for lack of evidence.

Second, even if we assume that the Mason County Case Activity Listing constituted a final land use decision regarding whether SOS is a cottage industry, this decision did not impact the Moores' claim—whether SOS is operating without a shoreline conditional use permit. Mason County requires cottage industries to obtain conditional use permits, and thus whether SOS is a "cottage industry" does not resolve the legality of the Loves' commercial use of their property for SOS. MCC 17.03.021; 17.50.040.[14] Third, the Moores raised additional arguments as to why SOS's operations constitute nuisance per se that do not involve any permitting decision. For example, the Moores argue that SOS violated the Mason County noise ordinance, chapter 9.36 MCC, and violated the WSDOT's regulations. Mason County's Case Activity

---

[14] Mason County Code's Shoreline Management Master Program states in the definitions section that cottage industries must obtain a conditional use permit. MCC 17.50.040. The broader development rules section of the Mason County Code requires a cottage industry to obtain a conditional use permit *unless* it can meet seven requirements, including that the cottage industry uses "[n]o equipment or process . . . which creates noise, vibration, glare, fumes, odors, or electrical interference *detectable to the normal senses off the property.*" MCC 17.03.021(6) (emphasis added).

Listing did not discuss, and, thus cannot constitute a land use decision on, these issues. Thus, the trial court erred in asserting that LUPA bars the Moores' nuisance per se claim.

B.    *Improper Reasonableness Balancing*

The Moores argue that the trial court erred in ruling that because SOS's interference with the Moores' land was not unreasonable, their nuisance per se claim must fail. We agree with the Moores.[15]

We review interpretations of law de novo. *Freedom Foundation v. Wash. State Dept. of Transp., Div. of Wash. State Ferries*, 168 Wn. App. 278, 286, 276 P.3d 341 (2012). Whereas nuisance in fact requires the trial court to balance the parties' interests to determine the reasonableness of the defendants' conduct, a claim for nuisance per se does not require such balancing. "When the conditions giving rise to a nuisance are also a violation of statutory prohibition, those conditions constitute a nuisance per se, and *the issue of the reasonableness of the defendant's conduct* and the weighing of the relative interests of the plaintiff and defendant *is precluded because the Legislature has, in effect, already struck the balance in favor of the innocent party.*" *Tiegs v. Boise Cascade Corp.*, 83 Wn. App. 411, 418, 922 P.2d 115 (1996) (quoting *Branch v. W. Petroleum, Inc.*, 657 P.2d 267, 276 (Utah 1982)).

This gives nuisance per se the character of strict liability. *Tiegs*, 83 Wn. App. at 418. However, the unlawful conduct must still interfere with a plaintiff's use and enjoyment of his or her land in some way for a nuisance per se claim to lie. *Tiegs*, 83 Wn. App. at 418; *see also*

---

[15] The Moores also argue that the trial court erred in interpreting the SMA to abolish a common law right of nuisance. However, the trial court did not interpret the statute in such a way. The trial court said that the Moores' nuisance per se claim fails because SOS's interference with their land is not, on balance, unreasonable. The trial court then added as an unrelated aside that the Moores could have received a damages remedy under the SMA if they had proven any damages.

*Motor Car Dealers Assoc. of Seattle v. Fred S. Haines Co.*, 128 Wash. 267, 273-74, 222 P. 611 (1924) (business competitor of car dealer could not establish nuisance per se where the defendant operated on Sunday in violation of law, because not a nuisance at all times, and because no negative impacts to the plaintiff's use of property whatsoever). However, establishing any interference of a plaintiff's use and enjoyment of property caused by acts violating a law satisfies nuisance per se, regardless of the interference's reasonableness. *Tiegs*, 83 Wn. App. at 418.

The trial court stated in its findings that SOS, on balance, did not have an unreasonable impact on the Moores' use and enjoyment of their land. However, it also found that SOS impacted the Moores' land. Thus the trial court found that SOS interfered with the Moores' use and enjoyment of their land to some degree, just not an unreasonable degree.

But after ruling that SOS's business had some impact on the Moores' use and enjoyment of their land, the trial court ruled that the Moores' nuisance per se claim failed, and that "[w]hether or not Mr. Love is operating in violation of the SMA, other Mason County or Washington State regulations or permits would not change the result." CP at 242. This is because the trial court determined that nuisance per se requires establishing that the violations lead to a use of land which *"injures* the plaintiffs' properties or *unreasonably* interferes with their enjoyment of their properties." CP at 242 (emphasis added). For this reason, the trial court rejected the Moores' claim, stating that the Loves' use of their property for SOS was "not, on balance, found to be unreasonable considering the rights, interests and conveniences of the parties." CP at 242.

In finding that the Moores' nuisance per se claim failed, the trial court misinterpreted the law, by applying a reasonableness balancing test to a nuisance per se claim. This is in direct

22

conflict with the law and, thus, constituted reversible error. We hold that the trial court erred in conducting reasonableness balancing when analyzing the Moores' nuisance per se claim.

C.    *New Trial on Nuisance Per Se*

We remand on the limited issue of nuisance per se. RAP 12.2 allows us to "take any other action as the merits of the case and the interest of justice may require" when deciding a case. An appellate court may affirm some issues, while remanding others. *See In re Yakima River Drainage Basin*, 177 Wn.2d 299, 350, 296 P.3d 835 (2013). This can serve as an effective way to bring a long and complex land use adjudication "one step closer to finality." *See Yakima River Drainage Basin*, 177 Wn.2d at 350.

Thus we hold that the trial court committed a reversible error of law, and that we may, in instructing the trial court, take any action as the interests of justice require. RAP 12.2. In this case, because the trial court erroneously interpreted the law, the trial court never reached the question of whether SOS had proper permitting. For this reason, justice would be served if we remanded this case for a new trial on nuisance per se, to allow the trial court to fully address and determine SOS's permitting status, and to determine whether that permitting status violated the law. Thus we remand for trial on the issue of nuisance per se.

We remand the issue to the trial court for a new trial where both sides may produce evidence of SOS's permitting status, which the trial court can use in making a new determination based upon the correct legal standard for nuisance per se.[16]

## V. ATTORNEY FEES AT TRIAL

Finally, the Moores argue that the trial court erred in granting the Loves attorney fees, arguing a number of theories. We hold that (1) the Loves are entitled to attorney fees under RCW 90.58.230 because they prevailed on the Shoreline Management Act claim, (2) the trial court did not need to make a finding of bad faith to award attorney fees under the SMA, but (3) the trial court impermissibly failed to segregate the fees. We reverse the attorney fee award, because the trial court improperly segregated the fees of the Loves' trial counsel Finlay, and then remand for a recalculation of fees consistent with our opinion.

A.   *Applicability of the SMA's Attorney Fee Provision*

The Moores argue that the trial court had no lawful basis for awarding attorney fees under the SMA's attorney fee provision. RCW 90.58.230. The Moores contend that the SMA did not make attorney fees available because the Moores did not make a claim under the SMA.

---

[16] The Loves argue that this court should dismiss the Moores' nuisance per se claim because the Moores failed to prove whether or not SOS had proper permits, citing *Gill v. LDI*, 19 F.Supp. 2d 1188 (W.D. Wash. 1998) as persuasive authority. However, in *Gill* the federal court held in defendant's favor on a dispute of *fact* (regarding whether or not defendant was in compliance with a permit), because plaintiff was the moving party on summary judgment. 19 F.Supp. 2d at 1191-92, 1199-1200.

Unlike *Gill*, which dealt with factual disputes on summary judgment, this case concerns a trial court's erroneous legal conclusion regarding nuisance per se following a bench trial. We review this erroneous conclusion of law de novo. Because the trial court's erroneous conclusion of law led it to refrain from making a factual finding as to whether or not SOS had proper permitting, remand is the appropriate remedy so as to resolve the factual dispute.

24

The Moores argue that they abandoned all damages claims during trial, meaning that they could not have possibly had a claim under the SMA, given that the SMA limits private parties' relief to damages. Thus the Moores argue that the Loves did not "prevail" on an SMA claim, and cannot collect attorney fees under the SMA. *See* Br. of Appellants at 45. We disagree.

Whether a legal basis to award attorney fees exists is a legal issue reviewed de novo. *Unifund CCR Partners v. Sunde*, 163 Wn. App. 473, 484, 260 P.3d 915 (2011). RCW 90.58.230, part of the SMA, provides:

> Private persons shall have the right to bring suit for damages under this section on their own behalf and on the behalf of all persons similarly situated. . . . [t]he court in its discretion may award attorney's fees and costs of the suit to the prevailing party.

> Private citizens may sue for damages under the SMA, but may not sue for injunctive or declaratory relief. *Hedlund v. White*, 67 Wn. App. 409, 414, 836 P.2d 250 (1992).

In this case, the Moores explicitly pleaded a claim for damages under the SMA in their complaint. At closing argument, the Moores stated, "While the plaintiffs are not necessarily seeking damages, damages are allowed both under the nuisance statute and state 'Shoreline Management Act' and should be considered by the court." CP at 160.

The Moores argue that when making the determination of whether the Moores made a claim for damages, the trial court should have limited itself to considering only admitted evidence. Thus, the Moores argue that the trial court should have disregarded the Moores' closing argument (because closing arguments are not evidence) and should have instead focused on the testimonies of Moore and Krueger, both of whom testified that they wanted only to prevent SOS from operating.

25

However, the Moores cite no authority suggesting that a trial court may consider admitted evidence only when determining whether a party made a claim. Nor do they cite any authority that a party may abandon a claim via witness testimony, or that such an abandonment would be effective in the face of a subsequent request at closing argument that the trial court considers the claim. We hold that the record reflects no abandonment of the SMA claim and that the SMA authorizes attorney fees in this case.

B.    *RCW 90.58.230's Attorney Fee Provision*

The Moores argue that the trial court violated RCW 90.58.230, because it allows the trial court to impose attorney fee awards only against a party who has litigated in bad faith. The Loves argue that the statute allows the trial court discretionary imposition of attorney fees against parties, irrespective of bad faith. II Br. of Respondents at 13. We agree with the Loves.[17]

We review questions of statutory interpretation de novo. *Manna Funding, LLC*, 173 Wn. App. at 890. RCW 90.58.230 states that the trial court "in its discretion may award attorney's fees and costs of the suit to the prevailing party." The trial court may award attorney fees to either the plaintiff or the defendant. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 823, 828 P.2d 549 (1992).

---

[17] The Moores also argue that the trial court abused its discretion by granting attorney fees because the fee award was "an undue deterrent, punishing Appellants' use of the courts to raise legitimate concerns when government defaults on its responsibilities." Br. of Appellant at 46-47. But the Moores cite no law to support this argument in their original briefs, and did not add any support in their supplemental briefs. Thus we do not consider it. *See Escude*, 117 Wn. App. at 190 n.4.

The Moores cite two cases for the proposition that RCW 90.58.230 limits the trial court to awarding fees against parties who have engaged in malicious conduct or made frivolous claims. *Cowiche Canyon Conservancy*, 118 Wn.2d at 823-24; *Hunt v. Anderson*, 30 Wn. App. 437, 443, 635 P.2d 156 (1981). However, both cases affirm the discretionary rulings by a trial court on attorney fees, and support the proposition that the trial court has discretion on whether to impose fees, overturned only for abuse of discretion. *Cowiche Canyon Conservancy*, 118 Wn.2d at 825; *Hunt*, 30 Wn. App. at 443. Thus we hold that RCW 90.58.230 does not require the trial court to make a finding of bad faith prior to awarding attorney fees in its discretion.

C.    *Segregation of Fees*

The Moores further argue that the trial court erred by awarding attorney fees to Finlay, incurred defending the Loves in district court in a criminal case. We agree.

The trial court's attorney fee award will not be overturned absent a manifest abuse of discretion. *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 375, 798 P.2d 799 (1990). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

A trial court must ordinarily segregate claims for which attorney fees are available from those for which fees are not available. *Dice v. City of Montesano*, 131 Wn. App. 675, 690, 128 P.3d 1253 (2006). However, a trial court need not segregate fees for claims that it finds so related that segregation is not reasonable. *Dice*, 131 Wn. App. at 690. A trial court need not segregate fees where the claims all relate to the same fact pattern, but provide different bases for recovery. *Manna Funding, LLC*, 173 Wn. App. at 901.

27

Of the trial court's attorney fee award of $28,907.44 to the Loves, $16,812.50 went to Finlay.[18] This $16,812.50 included fees that Finlay accrued by defending the Loves in a district court criminal case regarding their dock and jet ski float. The Moores had complained about the dock and jet ski float on June 5, 2007, almost one year after filing their lawsuit against the Loves on June 23, 2006. Finlay stated by declaration that he charged $2,000 for this district court criminal case. Finlay stated not only that the Kruegers instigated the district court criminal case through their complaint, but also that he used the legal research from the district court case to defend the Loves against the Moores' civil suit.

The trial court concluded that the time Finlay spent on the district court criminal case was too integrated with the litigation against the Moores for separation. The trial court did this because Finlay used much of the research done in defending the criminal complaint in the case against the Moores, and because the compliant occurred after the litigation with the Moores began.

It is well settled that courts may decline to segregate fees for unsuccessful *claims* when such *claims* are too intertwined to reasonably separate. *Dice*, 131 Wn. App. at 690. However, no authority states that courts may combine the fees for *separate cases* in *separate courts* on this basis.

---

[18] When the trial court reduced the attorney fee award from $36,034.69 to $28,907.44, it took the difference out of Eisenhower and Carlson, PLLC's fees, and did not reduce the amount awarded to Finlay. In its amendment to the attorney fee award, the trial court maintained that it had no obligation to segregate the fees Finlay incurred. The trial court ruled that it need not segregate attorney fees where the claims are too integrated to properly segregate them.

28

Although the district court case may have concerned the same legal issues as the Moores' nuisance suit and shared background research, this is not sufficient to justify merging a criminal case in district court with a civil case in superior court. Moreover, Finlay himself segregated the billing for the district court case. Finlay stated by declaration that he billed the Loves a $2,000 flat fee for the district court case, while he billed a $5,000 flat fee for the Moores' civil suit. Furthermore, one case focused on the Loves' dock and jet ski float, whereas the other case focused on the operation of SOS. Thus, not only could the trial court have segregated the cases, the Loves' attorney Finlay had already segregated them. The trial court abused its discretion by granting the Loves attorney fees for the district court case. We reverse the award of attorney fees for the district court case.

ATTORNEY FEES ON APPEAL

The Loves request attorney fees on appeal under the SMA's RCW 90.58.230. *See* RAP 18.1. The Loves argue that RCW 90.58.230 authorizes such fees. However, the Loves do not prevail on appeal based on any violation of the SMA, because the Moores did not appeal the SMA issue. Thus the Loves are not entitled to attorney fees on appeal under RCW 90.58.230. *See Juanita Bay Valley Cmty. Ass'n v. City of Kirkland*, 9 Wn. App. 59, 86-87, 510 P.2d 1140 (1973) (SMA does not authorize attorney fees to a plaintiff that did not prevail on his SMA claim, even though he prevailed on a related claim in the same case.

No. 41557-7-II
Consolidated with No. 44377-5-II

We affirm the trial court as to all issues except nuisance per se and attorney fees. We remand the issue of nuisance per se to the trial court for a new trial. We reverse the attorney fee award as to the fees for the district court case and remand for a recalculation of fees consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040 it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Johanson, J.

30